LENTO LAW GROUP PC AND LENTO
LAW FIRM,

   Plaintiffs,

v.

KRIS EMMANUEL ESTRADA

   Defendants.

**Civil Action No. 25-2763**

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS THE AMENDED COMPLAINT UNDER
FED.R. CIV. P. 12(B)(6) AND APPLICATION FOR ATTORNEYS'
FEES AND COSTS PURSUANT TO 42 PA C.S. § 8340.18**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ALLEGED IN OR INTEGRAL TO THE AMENDED COMPLAINT .......................... 1

    I.     Plaintiffs' Representation of Mr. Estrada.......................................................... 1

    II.    The Allegations in the Amended Complaint About Statements Allegedly Made by Mr. Estrada.................................................................................................................. 2

    III.    Mr. Estrada's Actual Online Reviews of Plaintiffs' Legal Services ............................ 2

LEGAL ARGUMENT............................................................................................................. 6

    I.     THE COMPLAINT FAILS TO STATE CLAIMS FOR DEFAMATION, TRADE LIBEL, AND TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS UNDER RULE 12(b)(6)....................................................................... 6

    a.    The Amended Complaint Fails to State a Claim for Defamation .................................. 6

        i.  The Amended Complaint Does Not Recite a Single Statement Actually Made by Mr. Estrada……………………………………………………….7

        ii.  Mr. Estrada's Online Reviews of Plaintiffs' Legal Services Are Not Defamatory……………………………………………………………………...8

    b.    The Complaint Fails to State a Claim for Trade Libel .................................................... 11

    c.    The Complaint fails to state a claim for Tortious Interference with Prospective Business Relations................................................................................................................. 13

FEES SHOULD BE AWARDED UNDER THE ANTI-SLAPP LAW ...................................... 14

CONCLUSION...................................................................................................................... 17

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Acclaim Sys., Inc. v. Infosys, Ltd.*,
679 F. App'x 207 (3d Cir. 2017) ................................................................................. 13

*Balletta v. Spadoni*,
47 A.3d 183 (Pa. Commw. Ct. 2012) ....................................................................... 7, 8

*Bro-Tech Corp. v. Thermax, Inc.*,
651 F. Supp. 2d 378 (E.D. Pa. 2009) .......................................................................... 12

*Clarity Sports Int'l LLC v. Redland Sports*,
400 F. Supp. 3d 161 (M.D. Pa. 2019) ........................................................................ 14

*Corr. Med. Care, Inc. v. Gray,*
No. Civ.A.07–2840, 2008 WL 248977 (E.D.Pa. Jan. 30, 2008) ............................... 13

*Devon Robotics v. DeViedma*,
No. 09-CV-3552, 2012 WL 3627419 (E.D. Pa. Aug. 23, 2012) ................................ 13

*Falco v. Zimmer*,
767 Fed. Appx. 288 (3d Cir. 2019) ............................................................................. 16

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ....................................................................................... 1

*Kryeski v. Schott Glass Techs., Inc.*,
426 Pa.Super. 105, 626 A.2d 595 (1993) .................................................................... 11

*Lee v. Univ. of Pennsylvania, Sch. of Dental Med.*, Civ.,
No. 19-835, 2019 U.S. Dist. LEXIS 145977 (E.D. Pa. Aug. 27, 2019) ....................... 7

*Liberty Mut. Ins. Co. v. Gemma,*
301 F. Supp. 3d 523 (W.D. Pa. 2018) ......................................................................... 14
Lombardo v. Leonard, Civ.,
No. 2:24-01711, 2025 U.S. Dist. LEXIS 54803 (E.D. PA, Mar. 24, 2025) ............... 13

*Maverick Steel Co. v. Dick Corp./Barton Malow,*
2012 Pa. Super. 173, 54 A.3d 352 (2012) ................................................................... 12

*Miller v. Masorti,*
2016 U.S. Dist. LEXIS 62027 (M.D. PA) ..................................................................... 8

*Monge v. Univ. of Pennsylvania*, 023,
U.S. Dist. LEXIS 11212 (E.D. Pa. 2023) ...................................................................... 6

*Pawlowski v. Smorto*,
403 Pa. Super. 71, 588 A.2d 36 (1991).......................................................................... 13

*Phillips v. Selig*,
2008 PA Super 244, 959 A.2d 420 (2008)....................................................................... 14

*Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Company,*
570 Pa. 242, 809 A.2d 243 (2002) ................................................................................. 12

*Sedwick v. Perrine*,
1993 WL 602581 (Pa. Com. Pl. June 3, 1993) .............................................................. 11

*Snyder v. Phelps*,
562 U.S. 443 (2011).................................................................................................. 16, 17

*Taylor v. Gural*,
No. CV 23-4882, 2025 WL 638596 (E.D. Pa. Feb. 27, 2025)...................................... 12

*Testing Sys., Inc. v. Magnaflux Corp.*,
251 F. Supp. 286 (E.D. Pa. 1966) ................................................................................. 12

*Thomas Merton Center v. Rockwell International Corp.*,
497 Pa. 460 (PA 1981)........................................................................................... 7, 8, 11

Statutes
15 U.S.C. § 45b.............................................................................................................. 17
42 Pa. C.S. § 8343(a) ...................................................................................................... 6
42 Pa. CS § 8340.12........................................................................................................ 15
42 PA C.S. § 8340.18........................................................................................... 1, 15, 17

Rules

FED. R. CIV. P. 12(b)(6).......................................................................................... passim

Other Authorities

*Id.,*
2023 U.S. Dist. LEXIS 11212, *9-12 ............................................................................ 7
Miller*,*
*2016 U.S. Dist. LEXIS 62027, *17*............................................................................... 9
*Monge*,
2023 U.S. Dist. LEXIS 11212 at *7-8 ........................................................................... 8
*Monge*,
2023 U.S. Dist. LEXIS 11212, *10 ............................................................................... 7

<u>**PRELIMINARY STATEMENT**</u>

The Amended Complaint should be dismissed both because it is devoid of any statement allegedly made by Mr. Estrada and because the online reviews that Defendants find offensive simply express the opinion of an unsatisfied law firm client. Plaintiffs' claims fail because Plaintiffs have not identified the specific words Plaintiffs claim are defamatory and tortious, Plaintiffs' claims also fail because the reviews themselves are not capable of defamatory meaning and thus are not actionable, nor have Plaintiffs alleged any specific harm resulting from Plaintiffs' online reviews. Accordingly, the Amended Complaint fails to state a claim.

Under Pennsylvania law, where claims targeting protected speech, such as Mr. Estrada's online reviews about Plaintiffs' legal services, are dismissed for failure to state a claim, fees must be awarded under Pennsylvania's Uniform Protected Public Expression Act (the "Anti-SLAPP Law"), 42 Pa. CS § 8340.18. Thus, as discussed more fully below, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) and fees should be awarded under that Anti-SLAPP law.

<u>**FACTS ALLEGED IN OR INTEGRAL TO THE AMENDED COMPLAINT**[1]</u>

## I.    Plaintiffs' Representation of Mr. Estrada

Plaintiffs are a law firm with offices in Philadelphia, PA, and Cherry Hill, NJ. *See* Amended Complaint, Docket No. 11, at ¶ 8-9. On August 5, 2024, Mr. Estrada retained Plaintiffs' legal services in connection with a disciplinary matter at the university he attended, American University in Washington, DC. *Id*. at ¶ 12. Mr. Estrada made a retainer payment of $15,000 for

---

[1] Any facts outside of the four corners of the Complaint provided here are integral to the Complaint and may therefore be considered without converting this motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting a "document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.")(internal quotations omitted; emphasis and alterations in original).

that matter. *Id*. On August 8, 2024, Mr. Estrada made an additional retainer payment of $5,000 so that Plaintiffs could represent him in connection with a criminal matter relating to the university disciplinary action. *Id*. at ¶ 13. Plaintiffs claim to have performed certain work for Mr. Estrada, *id*. at ¶ 16-18, but Mr. Estrada was not satisfied with their legal services and he engaged another law firm to represent him in both the university disciplinary action and the criminal matter. *See id*. at ¶ 15.

## II. The Allegations in the Amended Complaint About Statements Allegedly Made by Mr. Estrada

Plaintiffs allege that after they terminated their engagement with Mr. Estrada they discovered reviews that Plaintiffs now claim Mr. Estrada posted on various websites about his experience as Plaintiffs' client. *Id*. at ¶ 20-23. The Amended Complaint does not contain copies or excerpts of any of those reviews and does not specify any of the allegedly defaming words. Instead, the Amended Complaint alleges in conclusory terms that the reviews were "defamatory, inaccurate, misleading, untrue, and inflammatory" and describes them as "baseless accusations of professional negligence" and "unsupported accusations regarding Plaintiffs' fee arrangements being unethical." *Id*. However, ***nowhere in the Complaint is there a recitation of any specific allegedly defamatory statement made by Mr. Estrada***.

## III. Mr. Estrada's Actual Online Reviews of Plaintiffs' Legal Services

Given that they are integral to Plaintiffs' claims, attached hereto as Ex. A are actual reviews about Mr. Estrada's experience as a client of Plaintiffs that Mr. Estrada posted online. A few examples of those online reviews are below; all tell a consistent story:



Posted by Kris | April 19, 2025 | Hired Attorney

Failed to Produce Results in Court

After paying $5,000 for court representation, Mr. Lento and his firm failed to represent me by missing three court dates. Mr. Lento also included a media article about my ongoing case on his website without asking for my consent. I also sent Mr. Lento and his firm emails asking for updates on the status of Mr. Terrell Ratliff entering his appearance for my case, and I never received any clear responses. I eventually had a conference call with Mr. Lento and Mr. John E. Groff, who informed me they would draft a statement for the court and also email me the following day with an update. Yet, this never happened, and my follow-up emails were upsettingly ignored. If they could not appear for me in DC Superior Court because they needed a DC lawyer for support, then I wish they would have informed me about this in advance, especially considering that an office address in Washington DC is listed on their website.

Collapse Review

## Reviews    About    Contact    Location



**1.0**

(1)

**What do people say?**

| | | |
|---|---|---|
| Communication | | 1.0 |
| Responsiveness | | 1.0 |
| Quality of Service | | 1.0 |
| Value for Money | | 1.0 |

Posted by Kris

April 20, 2025

**Criminal Law**

Hired Attorney Joseph D. Lento

I hired Mr. Lento and the Lento Law Firm for representation in Washington, DC. I paid $5,000 for legal court representation, but they failed to appear for three court dates. After numerous emails being left unanswered, I finally had a conference call with Joseph Lento. John E. Groff, the "Firm Administrator" who is not a licensed attorney, was also present in this call. Mr. Groff stated the Lento Law Group will "provide a statement [to the court]." Even though he promised he would send me an email with a statement for the court, John Groff failed to follow up on his promise and remained unresponsive to my emails asking for a follow-up. I showed up to court having to tell my judge that the Lento Law Group once again have failed at entering their appearance with no explanation as to why.

**Hide Review ^**

### Lento Law Firm Student Defens…

Law firm
Manhattan

**PLACE DETAILS**



 **K E**

⋮

★★★★★ a day ago

I am disappointed with the Lento Law Firm. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. First, I could not locate their NYC office in Hudson Yards. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington, DC, yet the Lento Law Firm was charging me so for services rendered in Washington, DC. Also, Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports. Further, the Lento Law Firm published a news article about my case on their website without my permission. By failing to read through specific University policy, operating under retainer fees that are precluded in Washington DC, and practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm ultimately disappointed me greatly.



# Joseph D Lento

Save 🔖

Lento Law Firm

 17 years of experience

⚖ Criminal Law, Domestic Violence, DUI & DWI ...

🏛 New Jersey, Pennsylvania

**Review This Lawyer**

Compare ☐

## 💬 Client Reviews

**Kris E.**

May 8, 2025

**No Updates, Little Results, Not Satisfactory!**

I had a very negative, unprofessional, and unsatisfactory experience with Mr. Joseph Lento. In August 2024, I had two private phone calls with Mr. Joseph Lento, who assured me that he would be able to take my cases and provide legal representation. I later paid him a total of $20,000 for legal services in Washington DC. He charged me flat, non-refundable fees, which is already not allowed under the DC Ethics Rules of Professional Conduct (RPC), which is where both my matters took place. He also did not make it clear to me, at any point, that he was not barred to practice law in Washington DC. Because I was not kept informed and up to date, I sent numerous emails to Mr. Lento over the course of a few months, which were left unanswered. I finally had another (in retrospect, unproductive) call in November 2024 with Mr. Joseph Lento; he did not communicate and participate in the call as much as I expected. Further, as requested, Mr. Lento made a comment to the media regarding my case; but, Mr. Lento proceeded to publish the article with sensitive details about my case on all his websites, something that I never consented to. Some things I wish I could have done differently during this process is conduct better research on who I retain for legal services, such as seeing which states attorneys like Mr. Lento are barred in, and if attorneys like Mr. Lento have any current and/or previous disciplinary history with their State Bar.

**View Less** ⌃

*See* Ex. A.

<u>**LEGAL ARGUMENT**</u>

The Complaint must be dismissed because it does not allege an actual statement made by Mr. Estrada, and because Mr. Estrada's online reviews about his experience as a client of Plaintiffs do not contain words that are capable of a defamatory meaning. Accordingly, the Complaint should be dismissed under Rule 12(b)(6) and fees should be awarded under the Anti-SLAPP Law.

**I. THE COMPLAINT FAILS TO STATE CLAIMS FOR DEFAMATION, TRADE LIBEL, AND TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS UNDER RULE 12(b)(6).**

The standard under Fed. R. Civ. P. 12(b)(6) is settled:

An action may be dismissed if fail[s] to state a claim upon which relief can be granted. At the motion to dismiss stage, the Court must accept factual allegations as true, but it is not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation. To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The complaint must show more than a sheer possibility that a defendant has acted unlawfully, and the factual allegations must be enough to raise a right to relief above the speculative level.

*Monge v. Univ. of Pennsylvania*, 023 U.S. Dist. LEXIS 11212 *9 (E.D. Pa. 2023)(citations and quotations omitted).

**a. The Amended Complaint Fails to State a Claim for Defamation.**

To state a claim for defamation in Pennsylvania, the plaintiff must plead:

(1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa. C.S. § 8343(a)). A complaint for defamation must, on its face, **identify specifically what allegedly defamatory statements were made**, and to whom they were made… **Courts have not hesitated to dismiss meritless defamation claims at this stage**.

The first step a court must take in evaluating whether a statement is defamatory is to determine whether the statement is capable of a defamatory meaning. In making

this determination, the Court must address two questions: (1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character. When the statement at issue is not reasonably susceptible of a defamatory meaning, the plaintiff has failed to state a claim.

A statement is defamatory if it tends to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from association or dealing with him or her. The statement must do more than merely embarrass or annoy the plaintiff; it must provoke the kind of harm which has grievously fractured [one's] standing in the community of respectable society.

*Id.* 2023 U.S. Dist. LEXIS 11212, *9-12 (emphasis added)(citations and quotations omitted). True statements are not defamatory, nor are mere expressions of opinion. *Id*.; *see also*, *Balletta v. Spadoni*, 47 A.3d 183, 199 (Pa. Commw. Ct. 2012). "It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Thomas Merton Center v. Rockwell International Corp.*, 497 Pa. 460, 464-65 (PA 1981).

### i. The Amended Complaint Does Not Recite a Single Statement Actually Made by Mr. Estrada.

The Complaint fails to state a claim for defamation under Pennsylvania law because it does not "**identify specifically what allegedly defamatory statements were made**, and to whom they were made." *See Monge,* 2023 U.S. Dist. LEXIS 11212, *10. *Lee v. Univ. of Pennsylvania, Sch. of Dental Med.*, Civ. No. 19-835, 2019 U.S. Dist. LEXIS 145977, at *18-19 (E.D. Pa. Aug. 27, 2019)(dismissing defamation claim under Rule 12(b)(6) and noting conclusory statements that plaintiff was guilty of sexual harassment, dishonesty, and were insufficient because, "[t]o survive dismissal, Plaintiff must allege at least some specific statements identifying the speaker, the approximate date, the content, and the audience.")

Instead, the Complaint describes alleged statements by Mr. Estrada in conclusory terms, without setting forth any specific words allegedly published by Mr. Estrada. Complaint at ¶ 20-23. Consequently, on its face, the Complaint does not allege a communication that satisfies any of the elements of defamation under Pennsylvania law, let alone all seven of those elements. Accordingly, Plaintiffs' claims for defamation should be dismissed.

### ii. Mr. Estrada's Online Reviews of Plaintiffs' Legal Services Are Not Defamatory.

In *Monge*, the plaintiff filed a defamation suit against the publishers of a news article that described how the bones of one of the MOVE Bombing victims were stored in the plaintiff's – a University of Pennsylvania professor – office from 1986 to 2001, and were thereafter used as "teaching aids" during one of her courses without ever contacting the next of kin. *Monge*, 2023 U.S. Dist. LEXIS 11212 at *7-8. The plaintiff alleged defamation because the article "falsely accuse[d] [the plaintiff] of professional misconduct." *Id.* at 15. The court dismissed the Complaint because the alleged statements were substantially true and thus "not, as a matter of law, capable of defamatory meaning." *Id*. at 14. *See also Balletta v. Spadoni*, 47 A.3d 183, 199 (Pa. Commw. Ct. 2012)(affirming dismissal of defamation claim because statements that plaintiff and his associates were "anarchists," and "paper terrorists" were opinions not capable of defamatory meaning.); *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460, 462–63, 442 A.2d 213, 214–15 (1981)(dismissing complaint because it was not defamatory to create impression that members of plaintiff organization "were Communist sympathizers, associated with Communists or were in fact Communists.").

In *Miller v. Masorti*, 2016 U.S. Dist. LEXIS 62027, *14-17 (M.D. PA), the Court dismissed a defamation claim under Rule 12(b)(6) where statements by the defendant about the plaintiff, the District Attorney of Centre County, were posted online and deemed not defamatory by the Court.

There, the defendant, also an attorney, was quoted in an online article as referring to the plaintiff as employing "unseemly and sordid tactics" and that the defendant reported the plaintiff for forgery. The court, considering the defendant's statements, which were not contained in the complaint, without converting the motion to dismiss to a motion for summary judgment ruled:

> Statements of opinion are not defamation. Whether a particular statement is opinion or fact is a question of law for the trial court. Although using the phrase "unseemly and sordid tactics" may be a questionable choice of words, it is not sufficient if the words are merely embarrassing or annoying to the plaintiff. It is certainly not uncommon for opposing counsel to be critical of one another. What Masorti expressed was his displeasure at opposing counsel's techniques, perhaps using less than ideal language, but not words that should rise to the level of liability for defamation. Masorti's expression of his disapproval of [Parks Miller's] practice is a statement of opinion not founded on defamatory facts and therefore not actionable, even if it may be annoying or embarrassing.

*Miller*, 2016 U.S. Dist. LEXIS 62027, *17 (internal quotations and citations omitted).

As demonstrated in the chart below, which contains the statements in the online review set forth above, *see supra* p. 3, Mr. Estrada's online reviews, all of which are substantially similar, *see* Ex. A, are not actionable for defamation because they consist of facts that are not disputed and opinions relating to the services Plaintiffs provided to Mr. Estrada and do not contain words that tend to harm Plaintiffs' reputation.

| Mr. Estrada Statement | Fact or Opinion? | Analysis |
| --- | --- | --- |
| After paying $5,000 for court representation, Mr. Lento and his firm failed to represent me by missing three court dates. | Fact and opinion | Not stated, cited, or disputed in the Amended Complaint. |
| Mr. Lento also included a media article about my ongoing case on his website without asking for my consent. | Fact | Not stated, cited, or disputed in the Amended Complaint. |
| I also sent Mr. Lento and his firm emails asking for updates on the status of Mr. Terrell Ratliff | Fact and opinion | Not stated, cited, or disputed in the Amended Complaint. |

| | | |
|---|---|---|
| entering his appearance for my case, and I never received any clear responses. | | |
| I eventually had a conference call with Mr. Lento and Mr. John E. Groff, who informed me they would draft a statement for the court and also email me the following day with an update. | Fact | Not stated, cited, or disputed in the Amended Complaint. |
| Yet, this never happened, and my follow up emails were upsettingly ignored. | Fact and opinion | Not stated, cited, or disputed in the Amended Complaint. |
| If they could not appear for me in a DC Superior Court because they needed a DC lawyer for support, then I wish they would have informed me about this in advance, especially considering that an office address in Washington DC is listed on their website | Opinion | Not stated, cited, or disputed in the Amended Complaint. |

The online reviews refer to various aspects of Plaintiffs' representation of him, such as the date Mr. Estrada retained Plaintiffs; the amount of retainer he paid them; the attorneys who were assigned to represent him; whether they appeared for court dates; the number of telephone calls he had with them; and their responsiveness to his communications. *See id*. These are simply facts about Mr. Lento's experience that do not contain any words that could somehow be construed as harmful to Plaintiffs. Nowhere in the Complaint do Plaintiffs dispute these specific facts or allege any specific harm that resulted from any of those facts being posted online. Such facts are not defamation under Pennsylvania law. *See Monge* and *Lee supra.*

Likewise, as in *Miller*, while some of Mr. Estrada's online reviews use words like "very negative," "unethical," "disappointing," and "poor" to describe Plaintiffs' legal services, such

words are merely Mr. Estrada's opinions of the legal services he received. While the online reviews may be annoying or embarrassing for Plaintiffs, the terms in the context of the communications – websites providing consumers with reviews of lawyers and law firms – those terms do not "provoke the kind of harm which has grievously fractured one's standing in the community of respectable society," especially given that they are posted on websites where consumers expect to hear reviews – positive and negative – about attorneys' services. *Thomas Merton Center v. Rockwell International Corp.*, 497 Pa. 460, 464-65 (PA 1981)("[w]ords which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. Thus, we must consider the full context of the article to determine the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate."); *Kryeski v. Schott Glass Techs., Inc.*, 426 Pa.Super. 105, 626 A.2d 595, 600 (1993) (dismissing defamation claim under Rule 12(b)(6) because even though they may have been annoying and embarrassing, statements that plaintiff was "crazy" and "emotionally unstable" were not capable of defamatory meaning); *Sedwick v. Perrine*, 1993 WL 602581, at *2 (Pa. Com. Pl. June 3, 1993)(granting motion to dismiss, holding "making general allegations that the statements and charges in the letter are false and/or convey the impression that Plaintiffs engaged in unethical or illegal behavior does not satisfy the standard necessary to plead defamation" and directing plaintiff to "amend their Complaint to specifically identify any defamatory statements which they contend are actionable.").

For these reasons, the Amended Complaint fails to state a claim for defamation and Count I of the Amended Complaint should be dismissed under Rule 12(b)(6).

### b. The Complaint Fails to State a Claim for Trade Libel.

To state a claim for trade libel a plaintiff must allege

(1) the statement is false;

11

(2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss;

(3) pecuniary loss does in fact result; and

(4) the publisher either knows that the publication is false or acts in reckless disregard of its truth or falsity.

*Maverick Steel Co. v. Dick Corp./Barton Malow,* 2012 Pa. Super. 173, 54 A.3d 352, 354 (2012)(citing *Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Company,* 570 Pa. 242, 246, 809 A.2d 243, 246 (2002)). "In Pennsylvania, only statements of fact, not statements of opinion, can be the basis of defamation *per se*, defamation, and trade libel claims." *Taylor v. Gural*, No. CV 23-4882, 2025 WL 638596, at *8 (E.D. Pa. Feb. 27, 2025)

The Complaint fails to state claims for trade libel for a number of reasons. First, the Complaint is devoid of any statement by Mr. Estrada, so, by definition, the Complaint does not allege a statement by Mr. Estrada that is false and that could satisfy the other elements of a claim for trade libel. *See Maverick Steel Co., supra.* Moreover, the Complaint also fails to allege any pecuniary loss that could have resulted from any statement Mr. Estrada allegedly made, or that Mr. Estrada published his reviews online with a disregard for their truth or falsity. *See Testing Sys., Inc. v. Magnaflux Corp.*, 251 F. Supp. 286, 290 (E.D. Pa. 1966)(holding that a complaint that "states merely that as a result of the defendant's disparagement, [plaintiff] has suffered a loss of customers, current and prospective [and] no attempt is made to specify which customers, nor is there any effort to even approximate their value to him" failed to adequately plead a pecuniary loss sufficient to survive a motion to dismiss); *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 416 (E.D. Pa. 2009)("Pennsylvania law requires that a plaintiff claiming commercial disparagement plead damages with considerable specificity, by setting out in its complaint the

names of the customers lost and financial loss resulting from the tort.")(internal quotation marks omitted); *Corr. Med. Care, Inc. v. Gray,* No. Civ.A.07–2840, 2008 WL 248977, at * 17 (E.D.Pa. Jan. 30, 2008) (holding that Pennsylvania courts require a plaintiff claiming commercial disparagement to plead damages with considerable specificity by setting out the names of the lost customers and showing by figures how much has been lost financially).

For these reasons, the Amended Complaint fails to state a claim for trade libel and Count II of the Amended Complaint should be dismissed.

### c. The Complaint fails to state a claim for Tortious Interference with Prospective Business Relations

To state a claim for tortious interference with prospective business relations a plaintiff must allege:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party:
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Pawlowski v. Smorto*, 403 Pa. Super. 71, 78, 588 A.2d 36, 39–40 (1991).

"For a defendant to have specific intent to harm a contractual relationship it must first have knowledge of that contractual relationship… that knowledge must be specific to the particular contractual right upon which the defendant infringes. *General knowledge of a business relationship is not sufficient*." Lombardo v. Leonard, Civ. No. 2:24-01711, 2025 U.S. Dist. LEXIS 54803, *27-28 (E.D. PA, Mar. 24, 2025)(quoting *Acclaim Sys., Inc. v. Infosys, Ltd.*, 679 F. App'x 207, 211 (3d Cir. 2017) (emphasis in original); *Devon Robotics v. DeViedma*, No. 09-CV-3552,

2012 WL 3627419, at *16 (E.D. Pa. Aug. 23, 2012)("It is not enough for a plaintiff to show merely that defendant's actions had the incidental consequence of affecting plaintiff's business relationships with third persons. A plaintiff must show that the defendant acted for the malevolent purpose of interfering with the plaintiff's existing ... business relationships." (internal quotations and citations omitted); *Phillips v. Selig*, 2008 PA Super 244, ¶ 39, 959 A.2d 420, 435 (2008)(holding criticisms of attorneys' job performance and professional competence in the press was not actionable tortious interference); *see also Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 181 (M.D. Pa. 2019)(dismissing tortious interference claim when complaint lacked specific allegations identifying the contractual relationships with which the defendants allegedly interfered); *c.f. Liberty Mut. Ins. Co. v. Gemma,* 301 F. Supp. 3d 523, 543 (W.D. Pa. 2018)(denying motion to dismiss tortious interference claim because "the amended complaint sufficiently alleges the relationships with which Defendants interfered.").

Here, again, the absence from the Amended Complaint of any statement by Mr. Estrada is the death knell for Plaintiffs' claims because without a statement there could have been no tortious interference. Moreover, there is no allegation in the Complaint of any specific prospective contractual relationship of Plaintiffs that Mr. Estrada knew about and intentionally interfered with. Plainly, online reviews to the public, like Mr. Estrada's reviews of Plaintiffs' services, are not directed at a specific contractual relationship.

For these reasons, the Complaint fails to state a claim for tortious interference with prospective business relations and Count III of the Complaint should be dismissed.

### FEES SHOULD BE AWARDED UNDER THE ANTI-SLAPP LAW

The Anti-SLAPP Law was enacted in Pennsylvania because "[t]here has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression,"

and "participation in matters of public significance... should not be chilled through abuse of the judicial process." 42 Pa. CS § 8340.12. To achieve its stated purpose, the Anti-SLAPP Law: "(i) grants immunity to those groups or parties exercising the rights to protected public expression; and (ii) awards attorney fees to parties that are forced to defend against meritless claims arising from the exercise of the rights to protected public expression." *Id*. The Anti-SLAPP Law is to be construed broadly. *Id*. ("Broad construction of this subchapter will implement the goals").

The Anti-SLAPP Law grants immunity to "protected public expression," which includes a person's freedom of speech "on a matter of public concern…guaranteed by the First Amendment to the Constitution of the United States." *Id*. at § 8340.13. Under the Anti-SLAPP Law, "a person is immune from civil liability for a cause of action based on protected public expression if:

> (1)  The party asserting the cause of action based on protected public expression fails to:
>> (i) establish a prima facie case as to each essential element of the cause of action;
>> *or*
>> *(ii) state a cause of action upon which relief can be granted*.
>
> (2)  There is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part."

*Id*. at § 8340.15 (emphasis added).

If the party asserting immunity under the Anti-SLAPP law succeeds on a motion to dismiss for failure to state a claim under Rule 12(b)(6), such that "the party is immune under section 8340.15 (relating to grant of immunity), the court shall award the party attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action." *Id*. at § 8340.18.

In *Paucek, et al. v. Shaulis*, Civ. No. 24-9807, (D. NJ May 6, 2025), Judge Renee M. Bumb, Chief Judge of U.S. District Court for the District of New Jersey (Camden), sitting in diversity, applied New Jersey's anti-SLAPP law and awarded fees to a defendant who successfully moved to dismiss under Rule 12(b)(6). Like the Anti-SLAPP Law at issue here, New Jersey's anti-SLAPP law provides for an award of fees where the allegations in a complaint fail to state a claim for defamation. Consequently, Judge Bumb reasoned that a dismissal under Rule 12(b)(6) warranted fee-shifting under New Jersey's anti-SLAPP law.

Here, the Complaint is precisely the type of meritless defamation claim the Anti-SLAPP Law is intended to deter. Mr. Estrada's online reviews of Plaintiffs' legal services are matters of public concern and protected under the First Amendment of the U.S. Constitution and the Anti-SLAPP Law. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011)(stating speech involves matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Falco v. Zimmer*, 767 Fed. Appx. 288, 302 (3d Cir. 2019)(quoting *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)).

To be sure, the quality of legal services and the professionalism and ethics of lawyers practicing in Pennsylvania is a matter of concern to the community. For this reason, the Pennsylvania Bar Association provides the public with free and unfettered access to the PBA Legal Ethics and Professional Responsibility Committee's ethics opinions, *see* https://www.pabar.org/site/For-the-Public/Ethics-Opinions-Public, last visited June 20, 2025, and the Disciplinary Board of the Supreme Court of Pennsylvania, provides the public with free and unfettered access to Pennsylvania Supreme Court and Disciplinary Board orders issued in attorney

discipline and reinstatement matters. *See* https://www.padisciplinaryboard.org/cases/recent-cases, last visited June 20, 2025. "The Disciplinary Board of the Supreme Court of Pennsylvania is dedicated to **protecting the public**, maintaining the integrity of the legal profession, and safeguarding the reputation of the courts." *Id*. at https://www.padisciplinaryboard.org/. That consumer reviews like Mr. Estrada's are also matters of public concern is best demonstrated by the passing and enforcement of the federal Consumer Review Fairness Act of 2016, 15 U.S.C. § 45b, which prohibits businesses like Plaintiffs from including in their engagement letters "gag clauses" that prevent clients from posting critical and even negative reviews of their services online.

Accordingly, because the Amended Complaint targets speech that is protected under the Anti-SLAPP Law, online reviews of legal services, and because the Complaint fails to state a claim for defamation under Rule 12(b)(6), Mr. Estrada's online reviews of Plaintiffs' legal services should be granted immunity under Section 8340.15 of the Anti-SLAPP Law and fees should be awarded to Mr. Estrada under Section 8340.18 of the Anti-SLAPP Law.

## CONCLUSION

WHEREFORE the Complaint should be dismissed pursuant to Fed. Civ. P. 12(b)(6) and Defendant shall be awarded fees and costs under Pennsylvania's Uniform Public Expression Protection Act, 42 PA C.S. § 8340.18,

Dated: June 23, 2025

By: */s/ Seth A. Goldberg*
Seth A. Goldberg, Esq. (92478)
PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
2005 Market Street, Suite 3150
Philadelphia, PA 19103
sgoldberg@pashmanstein.com
(267) 319-7762

Bruce S. Rosen, Esq. (*pro hac vice* forthcoming)

17

PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200

*Attorneys for Plaintiff Kris Emmanuel Estrada*

18

**CERTIFICATE OF SERVICE**

I, Seth Goldberg, hereby certify that on June 23, 2025, the above document was served on counsel for the Plaintiffs via electronic mail.

*/s/ Seth Goldberg*
Seth Goldberg