# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

<table>
<tr>
<td>
LENTO LAW GROUP PC<br>
1814 RT 70 STE 321<br>
Cherry Hill, NJ 08003<br>
and<br>
LENTO LAW FIRM<br>
1650 Market Street, Suite 3600<br>
Philadelphia, Pennsylvania 19103<br>
v.<br><br>
KRIS EMMANUEL ESTRADA<br>
2163 Corktree Lane<br>
San Jose, CA 95132<br>
    *Defendant.*
</td>
<td>
CASE NO.: 25-2763<br><br>
CIVIL ACTION<br><br>
**JURY DEMAND REQUESTED**<br>
———————————————
</td>
</tr>
</table>

## SECOND AMENDED COMPLAINT

## CIVIL ACTION

Plaintiffs, LENTO LAW FIRM and LENTO LAW GROUP, PC, by way of Complaint against the Defendant, KRIS EMMANUEL ESTRADA, hereby state:

## PARTIES, JURISDICTION, & VENUE

1.     At all times relevant herein, Plaintiff LENTO LAW GROUP P.C., ("Group") is a professional corporation, with a corporate headquarters and principal place of business in the State of New Jersey located at 1814 RT 70 STE 321, Cherry Hill, NJ 08003.

2.     At all times relevant herein, Plaintiff LENTO LAW FIRM, ("Firm") is a professional corporation, with a corporate headquarters located at 1650 Market Street, Suite 3600, Philadelphia, Pennsylvania 19103.

3.     Throughout this Complaint, Firm and Group will be used interchangeably as claims against one entity adversely affects the other.  They are collectively referred to as "Plaintiffs."

4.     At all times relevant herein, Defendant KRIS EMMANUEL ESTRADA is, a citizen

1

of the State of kCalifornia with a residential address for service of process believed to be 2163 Corktree Lane, San Jose, California 95132.

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court also has jurisdiction over the declaratory judgment claim under 28 U.S.C. §§ 2201–2202.2202.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including reputational injury suffered by Plaintiffs in Philadelphia, Pennsylvania, where one of the Plaintiffs is headquartered and conducts business operations.

## GENERAL ALLEGATIONS

7.      Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

8.      In or around August 2024, Defendant Kris Emmanuel Estrada ("Defendant" or "Estrada") retained Plaintiffs for two limited-scope matters: (1) a university-level disciplinary engagement concerning American University in Washington, D.C., and (2) a criminal defense engagement for related allegations pending in Washington, D.C. Superior Court. Defendant executed separate Fee Agreements and paid $15,000 for the school-level engagement and $5,000 for the criminal matter.

9.      The university matter was non-litigation in nature and structured as an education advisory engagement only. Mr. Thomas Terrill was assigned to oversee this matter. Services included liaising with the university's general counsel, coordinating a withdrawal and tuition reimbursement, obtaining an Incomplete grade, seeking a medical leave of absence, assisting with communication drafts, and facilitating a delay in the student conduct process.

2

10.    The criminal matter was handled by Terrell Ratliff, whose court appearance required pro hac vice admission. Estrada was expressly informed that Ratliff could not enter an appearance until admitted. On November 8, 2024, a conference call was held between Estrada, his mother, Mr. Lento, Mr. Terrill, Mr. Ratliff, and Mr. Groff, during which this was clearly explained.

11.    On or around April 2025, Defendant began publishing a campaign of online reviews containing materially false, defamatory statements targeting Plaintiffs, their attorneys, and staff across more than a dozen platforms. In these reviews, Defendant republished the same false claims using slightly altered language across different jurisdictions.

## DEFENDANT'S DEFAMATORY SOCIAL MEDIA POSTS

12.    On April 19, 2025, Defendant gave  Plaintiffs a one-star review and posted on Awo, "After paying $5,000 for court representation, Mr. Lento and his firm failed to represent me by missing three court dates. Mr. Lento also included a media article about my ongoing case on his website without asking for my consent. I also sent Mr. Lento and his firm emails asking for updates on the status of Mr. Terrell Ratliff entering his appearance for my case, and I **never received any clear responses**. I eventually had a conference call with Mr. Lento and Mr. John E. Groff, who informed me they would draft a statement for the court and also email me the following day with an update. Yet, this never happened, and my **follow-up emails were upsettingly ignored**. If they could not app**ear for** me in DC Superior Court because they needed a DC lawyer for support, then I wish they would have informed me about this in advance, **especially considering that an office address in Washington DC is listed on their website**.  (Exhibit A.2)

13. This post contains false statements or implications.  Contrary to the post,  Defendant's emails were neither ignored nor were unclear responses provided.  Furthermore, the post

implies that Plaintiffs do not actually have an office in Washington, DC, which was untrue, because Plaintiffs do maintain a DC office and it has a sign on it.

14. On April 19, 2025, Defendant posted on Awo, "In August 2024, I paid $5,000 to Mr. Terrell Ratliff and the Lento Law Firm for representation in Washington DC Superior Court. Mr. Ratliff assured me in texts and calls that he would take on my case and spoke about his past experience working with prosecutors. Thinking I was in good hands, Mr. Ratliff then **missed three court dates in September, October, and November 2024**. He failed to provide me with regular updates on the progress of entering an appearance for my case. Mr. Ratliff also **failed to provide a reason as to why it was taking months to enter into my case**, nor did he provide any details or statement for me to provide to the Court explaining why I keep asking to extend my case for another date. It's upsetting because I genuinely believed Mr. Ratliff would help me in my case." (Exhibit A.3)

15. Upon information and belief, Defendant was advised that Mr. Ratliff needed to obtain a local counsel to move his pro hoc vice appearance, and this was the reason for the delays and Ratliff's inability to appear at the hearings, requiring postponements. This post is false, misleading, and creates a false impression that Ratliff never explained the reason he could not attend the hearings and the reason for the necessary postponements. The inaccuracies paint Plaintiffs in a false light.

16. Defendant posted the following on the Lento Google business site: "In August 2024, I retained the Lento Law Group who assigned Mr. Terrell Ratliff for representation in Washington DC Superior Court, even though he was not barred there. Mr. Ratliff assured me in texts and calls that he would take on my case. Thinking I was in good hands, Mr. Ratliff then missed three court dates in September, October, and November 2024. The Lento Law Group failed to provide me with regular updates on the progress of my case, rather it was the

other way around. They failed to draft a statement for me to provide to the Court explaining why I keep asking to extend my case for another date, which Mr. John Edward Groff, Jr. told me they would do. This experience was upsetting because I genuinely believed Mr. Lento and the Lento Law Group would help me in my case." (Exhibit A.4)

17. Upon information and belief, Defendant was advised that Mr. Ratliff needed to obtain a local counsel to move his pro hoc vice appearance, and this was the reason for the delays and Ratliff's inability to appear at the hearings, requiring postponements. This post is false, misleading, and creates a false impression that Ratliff never explained the reason he could not attend the hearings and the reason for the necessary postponements. The inaccuracies paint Plaintiffs in a false light.

18. Defendant posted similarly on another social media site as follows: "I am very disappointed with the Lento Law Group. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney and University of Miami faculty member who was handling my matter in Washington DC. First, I could not locate their physical office as listed in Regus - Coral Springs - Heron Bay. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Group was charging me with non-refundable fees for services rendered in Washington DC. Also, **Tom failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports**. Further, the Lento Law Group published a news article about my case on their website **without my permission**. It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based **on their lack of organization** in my opinion. They even refused to issue any refund of the $15,000 and failed to answer formal emails sent to them asking for such refunds when confronted with the DC Rules of Professional Conduct

5

(In re Robert W. Mance). * * * None of my statements contain false allegations, nor is it my intention to harass and defame Mr. Lento and/or his firm. Rather, what I write here is an accurate account of my experience with Mr. Lento and the Lento Law Group that I wish to share here and is also fully supported by evidence I have." (Exhibit A.5)

19. The caveat in this post that it was not made with the intention of harassing or defaming the Plaintiffs, recognizes that Defendant understood the defamatory nature of his post and was trying to circumvent the post's unambiguous language. It was untrue that Mr. Thomas Terrill did not understand under which policies Defendant's matters were covered. Such a statement falsely implies that Mr. Terrill was not professionally competent. Such a statement is, per se, defamatory. Likewise, referring to the Plaintiffs as disorganized suggests a lack of professionalism. These statements paint Plaintiffs in a false light.

20. Defendant posted on Plaintiffs' student defense internet page: "I hired the Lento Law Firm for representation in Washington, DC. **They missed three court dates** and failed to respond to any of my emails asking for updates. **I also do not believe they have any partner attorneys in their firm who are barred in Washington, DC. I also could not find their physical Jaw firm office at the Washington, DC address listed**." (Exhibit A.6)

21. This post is misleading as it implies that court dates were missed without reason or explanation. It fails to explain the need for a local counsel and pro hoc admission and that Defendant was advised to seek a postponement because pro hoc status had not yet been obtained. Furthermore, Defendant was never informed that the Firm had a DC barred attorney. The statement implies misrepresentation. Finally, Plaintiffs did have an office in DC, and the statement that Defendant could not locate it implies the misrepresentation of its existence. These statements paint Plaintiffs in a false light.

22. On the Lento Law Firm Manhattan webpage, Defendant posted: "I am disappointed with

the Lento Law Firm. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. First, I could not locate their NYC office in Hudson Yards. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington, DC, yet the Lento Law Firm was charging me so for services rendered in Washington, DC. Also, **Tom failed to produce any results for my disciplinary matter**. **He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports**. Further, the Lento Law Firm published a news article about my case on their website without my permission. By **failing to read through specific University policy**, operating under retainer fees that are precluded in Washington DC, and practicing law by **legally advising me in a jurisdiction that Tom Terrill is not licensed to do so**, Mr. Lento and the Lento Law Firm ultimately disappointed me greatly." (Exhibit A.7)

23. This post is misleading and paints the Plaintiffs in a false light. The statement that Mr. Terrill "failed to produce any results" implies that he was unprofessional. The statement is misleading as it fails to explain all of the efforts Mr. Terrill made on Defendant's behalf. It further implies that a positive result was guaranteed, which it was not. In fact, Mr. Terrill did review the University's rules. Finally, as an educational advisor, Mr. Terrill did not have to be barred in DC as his educational advice was generic and applied to any jurisdiction.

24. On another Lento firm webpage, Defendant posted: "I am disappointed with the Lento Law Firm. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. First, **I could not locate their office in the Chrysler Building**. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington, DC, yet the Lento Law Firm was charging me so for

services rendered in Washington, DC. Also, **Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports**. Further, the Lento Law Firm published a news article about my case on their website without my permission. **By failing to read through specific University policy**, operating under retainer fees that are precluded in Washington DC, and practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm ultimately disappointed me greatly." (Exhibit A.8)

25. As in Defendant's other posts, he painted Plaintiffs in a false light. He implied that Plaintiffs did not have a physical office while they did. Furthermore, the statement that Mr. Terrill "failed to produce any results" implies that he was unprofessional. The statement is misleading as it fails to explain all of the efforts Mr. Terrill made on Defendant's behalf. It further implies that a positive result was guaranteed, which it was not. In fact, Mr. Terrill did review the University's rules. Finally, as an educational advisor, Mr. Terrill did not have to be barred in DC as his educational advice was generic and applied to any jurisdiction.

26. On yet another webpage, Defendant continued his campaign of misrepresentation against the Plaintiffs posting, "I am very disappointed with the Lento Law Firm. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney and University of Miami faculty member who was handling my matter in Washington DC. First, I could not locate their physical office as listed in Waterford Corporate Park next to MIA. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Firm was charging me with non-refundable fees for services rendered in Washington DC. Also, **Tom failed to produce any results for my disciplinary matter. He**

8

**failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy** for which I was not given any right to due process by reviewing evidence and/or any reports.

27. As in Defendant's other posts, he painted Plaintiffs in a false light. He implied that Plaintiffs did not have a physical office while they did. Furthermore, the statement that Mr. Terrill "failed to produce any results" implies that he was unprofessional. The statement is misleading as it fails to explain all of the efforts Mr. Terrill made on Defendant's behalf. It further implies that a positive result was guaranteed, which it was not. In fact, Mr. Terrill did review the University's rules. Finally, as an educational advisor, Mr. Terrill did not have to be barred in DC as his educational advice was generic and applied to any jurisdiction.

28. On another webpage, Defendant posted: "I am very disappointed with the Lento Law Firm. I am a resident of San Jose, California; yet, I could not locate their office at Oyster Point located in South San Francisco, which is closest to my place of residence. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. Non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Firm was charging me with non-refundable fees for services rendered in Washington DC. Also, **Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports.** Further, the Lento Law Firm published a news article about my case on their website without my permission. **By failing to read through appropriate and relevant University policy**, operating under retainer fees that are not allowed in Washington DC, and **unethically practicing law** by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm were

a disappointment. It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based on **their lack of organization** in my opinion. They even refused to issue any refund of the $15,000 and failed to answer formal emails sent to them asking for such refunds when confronted with the DC Rules of Professional Conduct {In re Robert W. Mance)." (Exhibit A.10)

29. For the first time, Defendant per se defames the Plaintiffs by referring to them as unethical. As in Defendant's other posts, he painted Plaintiffs in a false light.  The statement that Mr. Terrill "failed to produce any results" implies that he was unprofessional.  The statement is misleading as it fails to explain all of the efforts Mr. Terrill took on Defendant's behalf.  It further implies that a positive result was guaranteed, which it was not.  In fact, Mr. Terrill did review the University's rules.  The term disorganized also implies unprofessionalism.  Finally, as an educational advisor, Mr. Terrill did not have to be barred in DC as his educational advice was generic and applied to any jurisdiction.

30. On May 8, 2025, Defendant posted on Mr. Lento's Justia webpage, "I had a very negative, **unprofessional**, and unsatisfactory experience with Mr. Joseph Lento. In August 2024, I had two private phone calls with Mr. Joseph Lento, who assured me that he would be able to take my cases and provide legal representation. I later paid him a total of $20,000 for legal services in Washington DC. He charged me flat, non-refundable fees, which is already not allowed under the DC Ethics Rules of Professional Conduct (RPC), which is where both my matters took place. **He also did not make it clear to me, at any point, that he was not barred to practice law in Washington DC**. Because I was not kept informed and up to date, I sent **numerous emails to Mr. Lento over the course of a few months, which were left unanswered**. I finally had another (in retrospect, unproductive) call in November 2024 with Mr. Joseph Lento; he did not communicate and participate in the call as much as I expected.

Further, as requested, Mr. Lento made a comment to the media regarding my case; but, Mr. Lento proceeded to publish the article with sensitive details about my case on all his websites, something that I never consented to.  Some things I wish I could have done differently during this process is conduct better research on who I retain for legal services, such as seeing which states attorneys like Mr. Lento are barred in, and if attorneys like Mr. Lento have any current and/or previous disciplinary history with their State Bar."  (Exhibit A.12)

31. The specific referral to Plaintiffs as "unprofessional"  is defamatory per se.  Furthermore, it is untrue that Plaintiffs did not advise Defendant that Mr. Lento was not barred in Washington, DC.  Potential clients are informed of the local counsel and pro hoc processes.

32. On April 20, 2025, Defendant posted on the Toprated Local website, "I had a very negative, **unethical**, and poor experience with Mr. Joseph Lento and the Lento Law Group. In August 2024, I retained and paid the Lento Law Group a total of $20,000 for their services in both a University matter and a legal matter in Washington DC. They charge flat, non-refundable fees, which is already not allowed under the DC Rules of Professional Conduct, which is where both my matters took place. For both matters, I was assigned Mr. Thomas Terrill (a New York-based attorney) and Mr. Terrell Ratliff (a Pennsylvania-based attorney), both of whom are not licensed to practice law in DC. **Mr. Terrill did not deliver any results for me other than advising me to not do anything**. Mr. Ratliff presents another very disappointing experience: he assured me he would be on my case and represent me in court. But,**Terrell Ratliff missed three DC court dates for me in September, October, and November**. Mr. Ratliff also failed to respond to any of my texts, calls, and emails asking for a status on when he can appear for me in court. When Mr. Ratliff failed to reply, I reached out to two Community Specialists at the Lento Law Group: Stephanie Morales and Angelita "Angie" Camacho Adames. Stephanie and Angie both told me they would keep me updated;

Angie even told me on the phone "not to appear in court" for my next date, which is entirely unethical advice since she is not a licensed attorney, and I would have faced penalties by the court if I failed to appear. After numerous emails being left unanswered, I finally had a conference call with Joseph Lento, Tom Terrill, and Terrell Ratliff. John E. Groff, the "Firm Administrator" who is not a licensed attorney in the United States, was also present in this call. Mr. Groff stated the Lento Law Group will "provide a statement [to the court]," in addition to promising he would "reach out tonight to an organization that I belong to that may be able to give us some assistance." Even though he promised he would send me an email with a statement for the court and an update on the status of my case, John Groff failed to follow up on his promise and remained unresponsive to my emails asking for a follow-up. I showed up to court having to tell my judge that the Lento Law Group and Mr. Terrell Ratliff once again have **failed at entering their appearance with no explanation as to why**. What I write is a genuine review backed by recordings of phone calls, numerous emails (and lack of replies), and text messages. None of my statements contain false allegations, nor is it my intention to harass and defame Mr. Lento and/or his firm. Rather, what I write here on Top Rated Local is an accurate account of my experience with Mr. Lento and his firm that is fully supported by evidence I have. I respectfully ask Mr. Lento to provide a professional and thorough response to my review for all to see, rather than privately threaten legal action against me (a young college student). Some things I wish I could have done differently during this process is conduct better research on who I retain for legal services, such as seeing which states attorneys are barred in, and If they have any current and/or previous disciplinary history with their State Bar." (Exhibit A.14)

33. The caveat in this post that it was not made with the intention of harassing or defaming the Plaintiffs, recognizes that Defendant understood the defamatory nature of his post and

was trying to circumvent the post's unambiguous language. Defendant was explained about the process of obtaining local counsel and pro hoc vice admission and why Mr. Ratliff had been unable to appear in Washington, DC. By failing to explain the context of the events, Defendant's post painted Plaintiffs in a false light and was misleading.

34. On April 19, 2025, Defendant posted an almost identical post as that discussed in ¶ 32. It contained identical or similar caveats and allegations as used in several of the posting previously discussed. (Exhibit A.15)

35. This post also contained per se defamatory language and misrepresentations and misleading statements contained in several prior postings.

36. On January 3, 2025, and again on April 20, 2025, Estrada sent mass emails to a list of other current or former clients and uninvolved third parties, stating:

> "I've retained legal counsel who agrees that the best course of action is to file a bar complaint… **Terrell engaged in unauthorized practice of law**… the Lento firm's fee agreement is super, super vague… we've formally requested my payment get returned due to major ethical concerns…"

37. These emails were widely circulated and later became part of other legal proceedings, further amplifying the defamatory campaign and damaging Plaintiffs' reputation. The allegations as to Mr. Ratliff were inaccurate.

38. As described above and contained in Exhibit A, Defendant engaged in a campaign of attacking Plaintiffs' professionalism and ethical behavior. Defendant consistently presents his interactions with the Plaintiffs and their staff in untrue, inaccurate, and misleading ways.

39. Defendant's campaign of harassing Plaintiffs, defaming them, and discouraging potential clients from hiring them, is continuing.

**FIRST CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH**
**CONTRACT**

40. Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above,

and incorporates same as if fully set forth at length herein.

41.     This cause of action is brought under Pennsylvania common law, as applied by the United States District Court for the Eastern District of Pennsylvania pursuant to its diversity jurisdiction under 28 U.S.C. § 1332.

42.     Pennsylvania courts have adopted the Restatement (Second) of Torts § 766's definition of tortious interference with contract. See *Maier v. Maretti*, 448 Pa. Super. 276, 288; 671 A.2d 701, 707 (1995) (citing *Thompson Coal Co. v. Pike Coal Co.*, 360 Pa. Super. 72, 519 A.2d 997 (1987)).

43.     Per the Restatement (Second) of Torts § 766, interference with contract occurs when someone "intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract," and that person "is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

44.     To prevail on a tortious interference claim, a plaintiff must show:

   i.      the existence of a contractual or prospective contractual relation between the complainant and a third party;

   ii.     purposeful action on the part of the defendant, specifically intended to harm the existing relation or prevent a prospective relation from forming;

   iii.    the absence of privilege or justification on the part of the defendant; and

   iv.    actual legal damage as a result of the defendant's conduct. *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997); see also *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (recognizing Pennsylvania standard in federal diversity context).

45.     Plaintiffs, Lento Law Firm and Lento Law Group, PC, are multi-jurisdictional legal

service providers with ongoing contractual relationships with retained clients and prospective contractual relationships with potential clients across the United States. Both rely significantly on their online reputations and digital outreach to attract and retain business.

46.    Defendant, having been a client of both entities and having executed written Fee Agreements, had firsthand knowledge of Plaintiffs' structure, clientele, and dependence on reputation and client trust.

47.    Beginning in or around April 2025, Defendant intentionally and maliciously published a series of online reviews targeting Plaintiffs and their employees, which contained demonstrably false factual allegations and were posted to third-party review platforms such as Google, Yelp, Avvo, Top Rated Local, Lawyers.com, Martindale, Justia, Birdseye, and similar websites.

48.    In these posts, Defendant repeatedly made statements including but not limited to:

    i.    "They missed three court dates and failed to respond to any of my emails asking for updates."

    ii.    "They charge flat, non-refundable fees, which is not allowed under the DC Rules of Professional Conduct."

    iii.    "Angie even told me on the phone 'not to appear in court' for my next date."

    iv.    "Tom failed to produce any results for my disciplinary matter."

    v.    "I showed up to court having to tell my judge that the Lento Law Group once again have failed at entering their appearance with no explanation."

    vi.    Disorganized.

    vii.    Tom Terrill did not review the University's policies and did not understand the nature of the case.

    viii.    "In addition to being a sick pervert sex freak, he's a blatant liar."

15

49. These statements were not only false, but specifically intended to cause reputational harm to Plaintiffs and discourage prospective clients from engaging with them. Defendant posted materially identical reviews across different geographic listings and platforms to maximize visibility and injury.

50. Defendant acted without privilege or legal justification. His actions were not protected speech, as the statements constituted assertions of false fact made with knowledge of their falsity or reckless disregard for the truth. Defendant's actions appear to be motivated by retaliation after failing to reverse a valid non-refundable fee for services rendered undersigned contracts.

51. As a direct and proximate result of Defendant's previously stated actions, Plaintiffs have suffered actual and prospective damages in that Plaintiffs' multiple review standing has gone down given the addition of Defendant's one-star review, Plaintiffs' attractiveness and/or reputability to the public has therefore been diminished, and clients or prospective clients who have seen the review (whether this has occurred, Plaintiffs have no way of knowing) can be dissuaded from continuing to utilize Plaintiffs' services or may refrain from engaging Plaintiffs at all.

**WHEREFORE**, Plaintiffs LENTO LAW FIRM and LENTO LAW GROUP, PC respectfully request that this Honorable Court enter judgment in their favor and against Defendant KRIS EMMANUEL ESTRADA on the claim of tortious interference with contractual and prospective relations, and award the following relief:

> i. Compensatory damages in an amount in excess of $75,000.00 to reasonably and properly compensate Plaintiffs for the loss of business, prospective client relationships, and contractual opportunities as a result of Defendant's intentional and unjustified interference;

ii. An order compelling Defendant to compensate Plaintiffs for reputational and economic harm caused by his direct and deliberate effort to dissuade potential clients from engaging with Plaintiffs, including through the widespread publication of false and malicious online statements;

iii. An award of interest, costs of suit, and such other and further relief as this Court deems just and proper under the laws of the Commonwealth of Pennsylvania;

iv. Plaintiffs affirm that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and that this matter is not subject to arbitration.

## SECOND CAUSE OF ACTION
### DEFAMATION

52. Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

53. Defendant has defamed Plaintiffs through numerous false and malicious online posts, as previously referenced and quoted herein.

54. To prevail on a defamation claim under Pennsylvania law, a Plaintiff must plead and prove:

i. the defamatory character of the communication;

ii. publication by the defendant;

iii. application of the statement to the plaintiff;

iv. understanding by the recipient of its defamatory meaning;

v. understanding by the recipient that the statement refers to the plaintiff;

      vi.     special harm resulting to the plaintiff; and

      vii.    abuse of a conditionally privileged occasion. *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 407 (Pa. 2015); see also Fed. R. Civ. P. 8(a).

55. There is no dispute that Defendant published the statements at issue. He posted his reviews on publicly accessible websites including Google, Yelp, Avvo, Top Rated Local, Justia, Martindale, Lawyers.com, Birdseye, and similar websites, where they were readily viewable by prospective clients, attorneys, and members of the public.

56. Each of Defendant's posts directly identifies Plaintiffs by name and refers to services he allegedly received from "Lento Law Firm," "Lento Law Group," and individual employees including Mr. Lento, Mr. Ratliff, Mr. Terrill, Ms. Camacho Adames, and Mr. Groff.

57. Any reasonable reader of these statements would understand that the reviews were referring to the Plaintiffs and were made with the intent of dissuading third parties from engaging their services or continuing existing engagements.

58. No conditional privilege applies to Defendant's statements. Defendant acted with malice or reckless disregard for the truth in repeatedly publishing false, defamatory, and unverified factual allegations.

59. Special damages have been pled in this Complaint, including the diversion of firm resources to counteract reputational harm, the cost of professional takedown services, reputational repair, and the loss of prospective and existing client relationships.

60. The business relationship between Plaintiffs and their prospective clients has been disrupted, as Defendant's false public reviews continue to circulate across multiple review platforms and geographic listings, making it foreseeable that clients will refrain from contacting, or will terminate relationships with, Plaintiffs.

61.     The untrue and defamatory statements published by Defendant include but are not limited to the following:

i.      "They missed three court dates and failed to respond to any of my emails asking for updates."

ii.     "They charge flat, non-refundable fees, which is not allowed under the DC Rules of Professional Conduct."

iii.    "Tom failed to produce any results for my disciplinary matter."

iv.     "Angie even told me on the phone 'not to appear in court,' which is entirely unethical advice."

v.      "Mr. Lento made a comment to the media about my case… and then published the article without my permission."

vi.     "In addition to being a sick pervert sex freak, he's a blatant liar."

vii.    "They failed at entering their appearance with no explanation as to why."

viii.   "They are not licensed to practice law in D.C. and were practicing unlawfully."

ix.     "They refused to issue refunds and ghosted me."

x.      "They publish misleading and unethical media posts."

62.     Each of these statements is demonstrably false. Defendant was explicitly informed on a recorded November 8, 2024, conference call with attorneys and staff about the pro hac vice requirement for court appearances. Non-attorneys did not offer legal advice, and all client communications were professionally and promptly addressed. Media content was shared only at Defendant's request. Flat fees were lawful, fully disclosed, and contractually agreed upon.

63.     As a result of these statements, Plaintiffs have been held out to disrepute and ridicule, with the natural and foreseeable result that clients have ceased contact, declined to sign

engagement agreements, and/or terminated ongoing engagements, causing substantial reputational and economic harm.

**WHEREFORE**, Plaintiffs demand judgment against Defendant KRIS EMMANUEL ESTRADA, in an amount in excess of $75,000.00, exclusive of interest and costs, and request the following relief:

    A.  to compensate Plaintiffs for loss of business due to the defamatory and false statements expressed on the online review platforms; and

    B.  to compensate Plaintiffs for the emotional distress resulting from being held out to disrepute and ridicule; and

    C.  The amount in controversy is in excess of $50,000.00 and this matter need not be submitted to arbitration.

**THIRD CAUSE OF ACTION**
**TRADE LIBEL/ COMMERCIAL**
**DISPARAGEMENT**

64.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

65.    Under Pennsylvania law, a claim for commercial disparagement (also referred to as trade libel) requires that a plaintiff plead and prove the following:

    i.    Defendant published a statement,

    ii.    That is false,

    iii.    That is intended or reasonably likely to cause pecuniary loss,

    iv.    That the defendant either knew to be false or acted in reckless disregard of its truth or falsity. See *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990); *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 244 (2002).

66.     Beginning in April 2025, Defendant posted a series of reviews across platforms such as Google, Yelp, Birdseye, Top Rated Local, Avvo, Lawyers.com, Justia, and similar sites, making false, malicious, and disparaging statements about the quality, legality, and ethics of Plaintiffs' services and business practices.

67.     The specific statements published by Defendant include, but are not limited to:

      i.     "They charged me flat, non-refundable fees, which is not allowed under the DC Rules of Professional Conduct."

      ii.     "They missed three court dates and failed to respond to any of my emails."

      iii.     "They refused to issue any refund and ghosted me."

      iv.     "They are not licensed to practice law in D.C. and were practicing unlawfully."

      v.     "Tom failed to produce any results for my disciplinary matter."

      vi.     "They committed malpractice and unethical behavior."

      vii.     "They posted media about my case without my consent."

      viii.     "They lied about being able to represent me in court."

68.     These statements were materially false and defamatory, and they directly disparaged the nature, legality, and quality of Plaintiffs' professional legal services.

69.     The statements were made publicly and were specifically designed to injure Plaintiffs' reputation in the legal services market, particularly in competitive digital spaces where online reviews strongly influence prospective clients' decisions.

70.     Defendant reposted near-identical reviews across multiple cities and profiles (e.g., "Lento Law Firm – Miami," "Lento Law Group – Coral Springs," "Lento Law Firm – San Francisco"), indicating an intentional and malicious effort to inflict reputational and

commercial harm on a national scale.

71.    Defendant acted with actual malice and/or reckless disregard for the truth. He was informed of the limits of representation (including pro hac vice issues), the scope of his educational advisory contract, and the facts surrounding billing and communication. Nevertheless, he repeatedly misrepresented those facts as part of a campaign to punish Plaintiffs for not refunding his full fee.

72.    As a result of Defendant's trade libel, Plaintiffs have suffered and continue to suffer:

  i.    Injury to business reputation;

  ii.   Loss of existing and potential clients;

  iii.  Negative search engine optimization (SEO) consequences from repeated one-star reviews;

  iv.   The cost of professional services for content removal and public response;

  v.    Interference with business opportunities in multiple jurisdictions.

**WHEREFORE**, Plaintiffs demand judgment against Defendant KRIS EMMANUEL ESTRADA, in an amount in excess of $75,000.00, exclusive of interest and costs, and request the following relief:

  A.  An award of compensatory damages to compensate Plaintiffs for the loss of business and reputational harm caused by the false and defamatory statements published on public platforms;

  B.  An award of punitive damages to deter Defendant and others from engaging in similar conduct in the future;

  C.  An award for the emotional distress and reputational injury suffered by individual staff named in the defamatory publications;

D.  The costs and attorneys' fees incurred by Plaintiffs in responding to and

remediating the reputational damage;

## FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT

73.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

74.    Under Pennsylvania law, a claim for breach of contract requires:

    i.    The existence of a contract,

    ii.    A breach of that contract.

    iii.    That the Plaintiff performed as required, and

    iv.    resulting damages. See *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

75.    In August 2024, Defendant entered into two separate written Fee Agreements: One with Lento Law Firm concerning a school-level university disciplinary matter, and One with Lento Law Group, PC concerning a criminal related matter.

76.    Each Fee Agreement set forth the terms of the engagement, the limited scope of services, and a flat, non-refundable fee structure clearly acknowledged and accepted by Defendant.

77.    Plaintiffs fully performed their obligations under both contracts, rendering extensive services, including consultation, communications with the university, therapist coordination, document drafting, strategic guidance, and, in the criminal matter, preparation for representation pending pro hac vice admission.

78.    Plaintiffs refunded Defendant the $5,000 paid under the criminal matter Fee Agreement, despite full performance of pre-appearance obligations. However, Defendant

subsequently initiated a credit card chargeback for the $15,000 paid under the school-level agreement.

79.    This unilateral reversal of payment after performance constitutes a material breach of the school-level Fee Agreement.

80.    As a direct and proximate result of Defendant's breach, Plaintiffs have suffered financial losses, including: loss of contractually agreed compensation, cost of previously rendered services for which they were never paid, and additional time and resources expended in attempting to collect on the breached obligation.

**WHEREFORE**, Plaintiffs demand judgment against Defendant KRIS EMMANUEL ESTRADA in an amount in excess of $75,000.00, exclusive of interest and costs, and request such other and further relief as this Honorable Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT (PLED IN**
**THE ALTERNATIVE)**

81.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

82.    This cause of action is pleaded in the alternative pursuant to Fed. R. Civ. P. 8(d)(2) in the event the Court finds that no valid or enforceable contract existed, or that the services provided fall outside the scope of the written Fee Agreement.

83.    Under Pennsylvania law, unjust enrichment arises when a defendant receives and retains a benefit conferred by the plaintiff without payment, and it would be inequitable to allow the defendant to retain that benefit without compensation. See *Mitchell v. Moore*, 729 A.2d 1200, 1203–04 (Pa. Super. Ct. 1999).

84.    Plaintiffs conferred valuable services upon Defendant, including professional advisory services, coordination with third parties, communications strategy, document preparation,

and direct support during an active university disciplinary process.

85.    These services were accepted and used by Defendant, who derived the full benefit of Plaintiffs' time, expertise, and staff coordination.

86.    Despite accepting these benefits, Defendant retained the $15,000 he previously paid by initiating a chargeback and depriving Plaintiffs of any compensation for services rendered.

87.    If the Court finds the contract unenforceable or inapplicable to the services performed, then it would be unjust and inequitable to allow Defendant to retain the benefit of Plaintiffs' labor without payment.

88.    As a result, Plaintiffs are entitled to recover the reasonable value of services rendered under a theory of unjust enrichment, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs request that, in the alternative to Count IV, the Court enter judgment in favor of Plaintiffs and against Defendant KRIS EMMANUEL ESTRADA for the reasonable value of services rendered, together with interest and costs, and for such other and further relief as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**DECLARATORY RELIEF UNDER**
**28 U.S.C. § 2201**

89.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein.

90.    This cause of action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that "in a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

91.    An actual, substantial, and continuing controversy exists between Plaintiffs and

Defendant regarding the truth or falsity of the statements Defendant published about Plaintiffs on numerous public-facing online platforms, including but not limited to Google, Yelp, Avvo, Justia, Top Rated Local, Lawyers.com, and Martindale.

92.    Defendant has repeatedly and publicly accused Plaintiffs of unethical conduct, legal malpractice, fraudulent billing, unlawful practice of law, and intentional wrongdoing, including the publication of the following false statements and injurious statements:

i.    "They missed three court dates and failed to respond to any of my emails."

ii.    "They charge flat, non-refundable fees, which is not allowed under the DC Rules of Professional Conduct."

iii.    "They took $20,000 and did nothing."

iv.    "Tom failed to produce any results."

v.    "They are not licensed to practice in D.C. and practiced unlawfully."

vi.    "Angie told me not to appear in court."

vii.    "They posted media about my case without my consent."

viii.    "In addition to being a sick pervert sex freak, he's a blatant liar."

93.    These statements are verifiably false and misleading. Defendant was informed throughout his engagement of all professional limitations, the nature of the fee agreements, the pro hac vice requirement, the extent of services rendered, and the status of media and communication strategies.

94.    Plaintiffs deny the truth of such statements and seek a judicial declaration that:

i.    The statements made by Defendant are false statements of fact,

ii.    The statements are not protected opinion or fair comment,

iii.    The statements are defamatory and injurious, and

       iv.    Defendant's continued publication of these statements is not privileged or constitutionally protected.

95.    Such a declaration would serve the useful purpose of resolving legal uncertainty regarding Plaintiffs' rights and would assist in future proceedings and takedown efforts, including under platform content policies and related administrative remedies.

96.    Absent declaratory relief, Plaintiffs will continue to suffer reputational and economic harm, and the cloud over their professional integrity will persist.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and issue a declaration under 28 U.S.C. § 2201 that Defendant's above-quoted statements are false, defamatory, unprivileged, and not protected by the First Amendment, and award such further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs LENTO LAW FIRM and LENTO LAW GROUP, PC respectfully request that this Honorable Court enter judgment in their favor and against Defendant KRIS EMMANUEL ESTRADA on all counts, and award the following relief:

    A. Compensatory damages in an amount to be determined at trial, but believed to exceed $75,000.00, including economic losses, reputational harm, and costs incurred as a result of Defendant's defamatory and tortious conduct;

    B. Special damages resulting from the loss of prospective and existing clients, damage to business relationships, and costs associated with removing or mitigating the impact of false online reviews;

    C. Punitive damages in light of the malicious, intentional, and repeated nature of Defendant's actions;

D. Declaratory relief under 28 U.S.C. § 2201 declaring that the statements published by Defendant are false, defamatory, and not constitutionally protected;

E. An order requiring Defendant to retract and remove all defamatory and disparaging reviews published about Plaintiffs on any public platform or website;

F. Reasonable attorneys' fees and costs of suit, including fees incurred to investigate, monitor, and respond to online content and legal correspondence;

G. Pre- and post-judgment interest as allowed by law;

H. Such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

Dated:  12-11-2025                   LENTO LAW GROUP, P.C.


                                     s/ *Lawrence A Katz, Esquire*
                                     LAWRENCE A KATZ
                                     Attorney for Plaintiff

28

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

/s/

Senior Litigation Counsel
Counsel for Plaintiffs
New Jersey ID:
Lento Law Group P.C.
3000 Atrium Way - Suite #200
Mt. Laurel, New Jersey 08054
P: (856) 652-2000  EXT 497
F: (856) 375-1010

Dated:  December  11, 2025

29

# Exhibit A

Exhibit A.1

Exhibit A.2

Showing 1 – 2 of 2 client reviews from Avvo

1 Star Reviews (2)

 ★★★★

Posted by Kris | April 19, 2025 | Hired Attorney

**Failed to Produce Results in Court**

After paying $5,000 for court representation, Mr. Lento and his firm failed to represent me by missing three court dates. Mr. Lento also included a media article about my ongoing case on his website without asking for my consent. I also sent Mr. Lento and his firm emails asking for updates on the status of Mr. Terrell Ratliff entering his appearance for my case, and I never received any clear responses. I eventually had a conference call with Mr. Lento and Mr. John E. Groff, who informed me they would draft a statement for the court and also email me the following day with an update. Yet, this never happened, and my follow-up emails were upsettingly ignored. If they could not appear for me in DC Superior Court because they needed a DC lawyer for support, then I wish they would have informed me about this in advance, especially considering that an office address in Washington DC is listed on their website.

**Collapse Review**

Showing 1 – 1 of 1 client review from Avvo

1 Star Reviews (1)    ⌄

 

Posted by Kris | April 19, 2025 | Hired Attorney

Upsetting Washington DC Representation

In August 2024, I paid $5,000 to Mr. Terrell Ratliff and the Lento Law Firm for representation in Washington DC Superior Court. Mr. Ratliff assured me in texts and calls that he would take on my case and spoke about his past experience working with prosecutors. Thinking I was in good hands, Mr. Ratliff then missed three court dates in September, October, and November 2024. He failed to provide me with regular updates on the progress of entering an appearance for my case. Mr. Ratliff also failed to provide a reason as to why it was taking months to enter into my case, nor did he provide any details or statement for me to provide to the Court explaining why I keep asking to extend my case for another date. It's upsetting because I genuinely believed Mr. Ratliff would help me in my case.

Collapse Review

**Terrell Ratliff**

Replied last April 25, 2025

Thank you for your feedback. I must respectfully clarify several inaccuracies in your review. First, I was never retained by you for representation in Washington D.C. Superior Court. Your retainer agreement and payment were made directly to the Lento Law Firm, not to me personally. At all times, I communicated with you openly and honestly based on the information available to me, and I acted in good faith. Second, I was not responsible for entering an appearance in your case or for attending your court dates. Your concerns about delays and court appearances should be directed to the law firm you retained. Any claims suggesting that I missed court dates or failed to act are factually incorrect and misrepresent my role. While I understand the frustration you may feel about your case's progress, it would be more appropriate to address your concerns with the firm that you hired. I take great pride in maintaining transparency and professionalism with everyone I interact with, whether they are clients or prospective clients. I wish you the best in resolving your legal matters.

Exhibit A.3

**Lento Law Group, P.C.**

Personal injury attorney
Greentree

**PLACE DETAILS**



 **Kris Estrada**

⋮

 ★ ☆ ☆ ☆ ☆   6 days ago

In August 2024, I retained the Lento Law Group who assigned Mr. Terrell Ratliff for representation in Washington DC Superior Court, even though he was not barred there. Mr. Ratliff assured me in texts and calls that he would take on my case. Thinking I was in good hands, Mr. Ratliff then missed three court dates in September, October, and November 2024. The Lento Law Group failed to provide me with regular updates on the progress of my case, rather it was the other way around. They failed to draft a statement for me to provide to the Court explaining why I keep asking to extend my case for another date, which Mr. John Edward Groff, Jr. told me they would do. This experience was upsetting because I genuinely believed Mr. Lento and the Lento Law Group would help me in my case.

Exhibit A.4

**Lento Law Group, P.C.**
Law firm
Heron Bay
**PLACE DETAILS**



 K E

⋮

⭐ ☆ ☆ ☆ ☆    4 days ago

I am very disappointed with the Lento Law Group. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney and University of Miami faculty member who was handling my matter in Washington DC. First, I could not locate their physical office as listed in Regus - Coral Springs - Heron Bay. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Group was charging me with non-refundable fees for services rendered in Washington DC. Also, Tom failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports. Further, the Lento Law Group published a news article about my case on their website without my permission. It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based on their lack of organization in my opinion. They even refused to issue any refund of the $15,000 and failed to answer formal emails sent to them asking for such refunds when confronted with the DC Rules of Professional Conduct (In re Robert W. Mance).

None of my statements contain false allegations, nor is it my intention to harass and defame Mr. Lento and/or his firm. Rather, what I write here is an accurate account of my experience with Mr. Lento and the Lento Law Group that I wish to share here and is also fully supported by evidence I have.

Exhibit A.5

## Lento Law Firm Student Defense ...

Law firm
Near Northeast

**PLACE DETAILS**



 **Kris Estrada**

⋮

   3 weeks ago

I hired the Lento Law Firm for representation in Washington, DC. They missed three court dates and failed to respond to any of my emails asking for updates. I also do not believe they have any partner attorneys in their firm who are barred in Washington, DC. I also could not find their physical law firm office at the Washington, DC address listed.

 2          ⤴ Share

Exhibit A.6

**Lento Law Firm Student Defens...**

Law firm
Manhattan

**PLACE DETAILS**



 **K E**

⋮

★ ☆ ☆ ☆ ☆     a day ago

I am disappointed with the Lento Law Firm. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. First, I could not locate their NYC office in Hudson Yards. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington, DC, yet the Lento Law Firm was charging me so for services rendered in Washington, DC. Also, Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports. Further, the Lento Law Firm published a news article about my case on their website without my permission. By failing to read through specific University policy, operating under retainer fees that are precluded in Washington DC, and practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm ultimately disappointed me greatly.

Exhibit A.7

**Lento Law Firm**
Criminal justice attorney
Manhattan

**PLACE DETAILS**



 **Kris Estrada**

⋮

 ☆ ☆ ☆ ☆    3 weeks ago

I am disappointed with the Lento Law Firm. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. First, I could not locate their office in the Chrysler Building. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington, DC, yet the Lento Law Firm was charging me so for services rendered in Washington, DC. Also, Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports. Further, the Lento Law Firm published a news article about my case on their website without my permission. By failing to read through specific University policy, operating under retainer fees that are precluded in Washington DC, and practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm ultimately disappointed me greatly.

Exhibit A.8

Lento Law Firm Student Defens...
Law firm
**PLACE DETAILS**



 **K E**

⋮

★ ★ ★ ★ ★    4 days ago

I am very disappointed with the Lento Law Firm. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney and University of Miami faculty member who was handling my matter in Washington DC. First, I could not locate their physical office as listed in Waterford Corporate Park next to MIA. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Firm was charging me with non-refundable fees for services rendered in Washington DC. Also, Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports. Further, the Lento Law Firm published a news article about my case on their website without my permission. By failing to read through specific University policy, operating under retainer fees that are precluded in Washington DC, and practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm are a great disappointment. It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based on their lack of organization in my opinion. They even refused to issue any refund of the $15,000 and failed to answer formal emails sent to them asking for such refunds when confronted with the DC Rules of Professional Conduct (In re Robert W. Mance).

Exhibit A.9



**Lento Law Firm Student Defens...**
Law firm
The East Side
**PLACE DETAILS**



 **K E**

⋮

★ ★ ★ ★ ★   4 days ago

I am very disappointed with the Lento Law Firm. I am a resident of San Jose, California; yet, I could not locate their office at Oyster Point located in South San Francisco, which is closest to my place of residence. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. Non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Firm was charging me with non-refundable fees for services rendered in Washington DC. Also, Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports. Further, the Lento Law Firm published a news article about my case on their website without my permission. By failing to read through appropriate and relevant University policy, operating under retainer fees that are not allowed in Washington DC, and unethically practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm were a disappointment. It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based on their lack of organization in my opinion. They even refused to issue any refund of the $15,000 and failed to answer formal emails sent to them asking for such refunds when confronted with the DC Rules of Professional Conduct (In re Robert W. Mance).

Exhibit A.10

**Exhibit A.11**

 **JUSTIA** Lawyers

Search Legal Issu



# Joseph D Lento

Lento Law Firm

- 17 years of experience
- Criminal Law, Domestic Violence, DUI & DWI ...
- New Jersey, Pennsylvania

**Review This Lawyer**

Save 🔖

Compare ☐

## 💬 Client Reviews

**Kris E.**

May 8, 2025

**No Updates, Little Results, Not Satisfactory!**

I had a very negative, unprofessional, and unsatisfactory experience with Mr. Joseph Lento. In August 2024, I had two private phone calls with Mr. Joseph Lento, who assured me that he would be able to take my cases and provide legal representation. I later paid him a total of $20,000 for legal services in Washington DC. He charged me flat, non-refundable fees, which is already not allowed under the DC Ethics Rules of Professional Conduct (RPC), which is where both my matters took place. He also did not make it clear to me, at any point, that he was not barred to practice law in Washington DC. Because I was not kept informed and up to date, I sent numerous emails to Mr. Lento over the course of a few months, which were left unanswered. I finally had another (in retrospect, unproductive) call in November 2024 with Mr. Joseph Lento; he did not communicate and participate in the call as much as I expected. Further, as requested, Mr. Lento made a comment to the media regarding my case; but, Mr. Lento proceeded to publish the article with sensitive details about my case on all his websites, something that I never consented to. Some things I wish I could have done differently during this process is conduct better research on who I retain for legal services, such as seeing which states attorneys like Mr. Lento are barred in, and if attorneys like Mr. Lento have any current and/or previous disciplinary history with their State Bar.

**View Less** ∧

**Reviews**         About         Contact         Location

 Lawyers.com

**1.0**
★★★★★
(1)

**What do people say?**

| | | |
|---|---|---|
| Communication | ▬▬▬▬▬▬▬▬▬ | 1.0 |
| Responsiveness | ▬▬▬▬▬▬▬▬▬ | 1.0 |
| Quality of Service | ▬▬▬▬▬▬▬▬▬ | 1.0 |
| Value for Money | ▬▬▬▬▬▬▬▬▬ | 1.0 |

★★★★★

Posted by Kris

April 20, 2025

**Criminal Law**

Hired Attorney Joseph D. Lento

I hired Mr. Lento and the Lento Law Firm for representation in Washington, DC. I paid $5,000 for legal court representation, but they failed to appear for three court dates. After numerous emails being left unanswered, I finally had a conference call with Joseph Lento. John E. Groff, the "Firm Administrator" who is not a licensed attorney, was also present in this call. Mr. Groff stated the Lento Law Group will "provide a statement [to the court]." Even though he promised he would send me an email with a statement for the court, John Groff failed to follow up on his promise and remained unresponsive to my emails asking for a follow-up. I showed up to court having to tell my judge that the Lento Law Group once again have failed at entering their appearance with no explanation as to why.

**Hide Review ^**

Exhibit A.12

Showing 1-1 of 1 client reviews from Lawyers.com

**✎ Write a Client Review**



**Lawyers.com**

**1.3**
(1)

**What do people say?**

| | | |
|---|---|---|
| Communication | | 2.0 |
| Responsiveness | | 1.0 |
| Quality of Service | | 1.0 |
| Value for Money | | 1.0 |

Posted by Kris

April 20, 2025

**Criminal Law**

Hired Attorney Terrell A. Ratliff

In August 2024, I paid $5,000 to Mr. Terrell Ratliff and the Lento Law Firm for representation in Washington DC Superior Court. Mr. Ratliff assured me in texts and calls that he would take on my case and spoke about his past experience working with prosecutors. Thinking I was in good hands, Mr. Ratliff then missed three court dates in September, October, and November 2024. He failed to provide me with regular updates on the progress of entering an appearance for my case. Mr. Ratliff also failed to provide a reason as to why it was taking months to enter into my case, nor did he provide any details or statement for me to provide to the Court explaining why I keep asking to extend my case for another date. It's upsetting because I genuinely believed Mr. Ratliff would help me in my case.

**Hide Review ∧**



Exhibit A.13

Exhibit A.14

 LOCAL

Search Top Rated Local Businesses...    Login    **Create Free Account**

**Kris E.**  🛡 4 reviews

⭐ *04/20/2025*

I had a very negative, unethical, and poor experience with Mr. Joseph Lento and the Lento Law Group. In August 2024, I retained and paid the Lento Law Group a total of $20,000 for their services in both a University matter and a legal matter in Washington DC. They charge flat, non-refundable fees, which is already not allowed under the DC Rules of Professional Conduct, which is where both my matters took place. For both matters, I was assigned Mr. Thomas Terrill (a New York-based attorney) and Mr. Terrell Ratliff (a Pennsylvania-based attorney), both of whom are not licensed to practice law in DC. Mr. Terrill did not deliver any results for me other than advising me to not do anything. Mr. Ratliff presents another very disappointing experience: he assured me he would be on my case and represent me in court. But, Terrell Ratliff missed three DC court dates for me in September, October, and November. Mr. Ratliff also failed to respond to any of my texts, calls, and emails asking for a status on when he can appear for me in court. When Mr. Ratliff failed to reply, I reached out to two Community Specialists at the Lento Law Group: Stephanie Morales and Angelita "Angie" Camacho Adames. Stephanie and Angie both told me they would keep me updated; Angie even told me on the phone "not to appear in court" for my next date, which is entirely unethical advice since she is not a licensed attorney, and I would have faced penalties by the court if I failed to appear. After numerous emails being left unanswered, I finally had a conference call with Joseph Lento, Tom Terrill, and Terrell Ratliff. John E. Groff, the "Firm Administrator" who is not a licensed attorney in the United States, was also present in this call. Mr. Groff stated the Lento Law Group will "provide a statement [to the court]," in addition to promising he would "reach out tonight to an organization that I belong to that may be able to give us some assistance." Even though he promised he would send me an email with a statement for the court and an update on the status of my case, John Groff failed to follow up on his promise and remained unresponsive to my emails asking for a follow-up. I showed up to court having to tell my judge that the Lento Law Group and Mr. Terrell Ratliff once again have failed at entering their appearance with no explanation as to why. What I write is a genuine review backed by recordings of phone calls, numerous emails (and lack of replies), and text messages. None of my statements contain false allegations, nor is it my intention to harass and defame Mr. Lento and/or his firm. Rather, what I write here on Top Rated Local is an accurate account of my experience with Mr. Lento and his firm that is fully supported by evidence I have. I respectfully ask Mr. Lento to provide a professional and thorough response to my review for all to see, rather than privately threaten legal action against me (a young college student). Some things I wish I could have done differently during this process is conduct better research on who I retain for legal services, such as seeing which states attorneys are barred in, and if they have any current and/or previous disciplinary history with their State Bar.



**Kris E.**
Milpitas, CA
🏠 19  ⊙ 5  ⊠ 3

     Apr 19, 2025

📷 **1 photo**

I had a very negative, unethical, and poor experience with Mr. Joseph Lento and the Lento Law Group. In August 2024, I retained and paid the Lento Law Group a total of $20,000 for their services in both a University matter and a legal matter in Washington DC. They charge flat, non-refundable fees, which is already not allowed under the DC Rules of Professional Conduct, which is where both my matters took place. For both matters, I was assigned Mr. Thomas Terrill (a New York-based attorney) and Mr. Terrell Ratliff (a Pennsylvania-based attorney), both of whom are not licensed to practice law in DC. Mr. Terrill did not deliver any results for me other than advising me to not do anything. Mr. Ratliff presents another very disappointing experience: he assured me he would be on my case and represent me in court. But, Terrell Ratliff missed three DC court dates for me in September, October, and November. Mr. Ratliff also failed to respond to any of my texts, calls, and emails asking for a status on when he can appear for me in court. When Mr. Ratliff failed to reply, I reached out to two Community Specialists at the Lento Law Group: Stephanie Morales and Angelita "Angie" Camacho Adames. Stephanie and Angie both told me they would keep me updated; Angie even told me on the phone "not to appear in court" for my next date, which is entirely unethical advice since she is not a licensed attorney, and I would have faced penalties by the court if I failed to appear. After numerous emails being left unanswered, I finally had a conference call with Joseph Lento, Tom Terrill, and Terrell Ratliff. John E. Groff, the "Firm Administrator" who is not a licensed attorney in the United States, was also present in this call. Mr. Groff stated the Lento Law Group will "provide a statement [to the court]," in addition to promising he would "reach out tonight to an organization that I belong to that may be able to give us some assistance." Even though he promised he would send me an email with a statement for the court and an update on the status of my case, John Groff failed to follow up on his promise and remained unresponsive to my emails asking for a follow-up. I showed up to court having to tell my judge that the Lento Law Group and Mr. Terrell Ratliff once again have failed at entering their appearance with no explanation as to why.

What I write is a genuine review backed by recordings of phone calls, numerous emails (and lack of replies), and text messages. None of my statements contain false allegations, nor is it my intention to harass and defame Mr. Lento and/or his firm. Rather, what I write here on Yelp is an accurate account of my experience with Mr. Lento and his firm that is fully supported by evidence I have. I respectfully ask Mr. Lento to provide a professional and thorough response to my review for all to see, rather than privately threaten legal action against me (a young college student).

Some things I wish I could have done differently during this process is conduct better research on who I retain for legal services, such as seeing which states attorneys are barred in, and if they have any current and/or previous disciplinary history with their State Bar.

# Exhibit A.15