# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LENTO LAW GROUP PC AND LENTO LAW FIRM, | Civil Action No. 25-2763 |
|        Plaintiffs, | |
| v. | |
| KRIS EMMANUEL ESTRADA | |
|        Defendants. | |

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER FED.R. CIV. P. 12(B)(6) AND APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 PA C.S. § 8340.18

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ALLEGED IN THE SAC ........................................................................................ 2

PROCEDURAL BACKGROUND ......................................................................................... 3

LEGAL ARGUMENT ............................................................................................................. 4

    I.      LEGAL STANDARD ............................................................................................. 4

    II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION AND
          TRADE LIBEL .................................................................................................... 4

       a.   Mr. Estrada's Statements About Plaintiffs' Legal Services are Matters of Public
           Concern. ............................................................................................................... 6

       b.   Mr. Estrada's Online Reviews of Plaintiffs' Legal Services Are Not Defamatory. ....... 7

       c.   The Complaint Fails to State a Claim for Trade Libel................................................. 15

    III.   PLAINTIFFS' OTHER CLAIMS SHOULD BE DEEMED WAIVED AND BARRED
          BY THE COURT'S ORDER DATED DECEMBER 10, 2025 ................................. 16

FEES SHOULD BE AWARDED UNDER THE ANTI-SLAPP LAW ...................................... 17

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Balletta v. Spadoni*,
47 A.3d 183 (Pa. Commw. Ct. 2012) ................................................................ 5, 7

*Bro-Tech Corp. v. Thermax, Inc.*,
651 F. Supp. 2d 378 (E.D. Pa. 2009) ...................................................................... 15

*Connick v. Myers*,
461 U.S. 138 (1983) ............................................................................................... 6

*Corr. Med. Care, Inc. v. Gray,* Civ. A.,
No. 07–2840, 2008 WL 248977 (E.D. Pa. Jan. 30, 2008) ...................................... 15

*Falco v. Zimmer*,
767 F. App'x 288 (3d Cir. 2019) ....................................................................... 6, 19

*In re Robert W. Mance,*
*II*, 980 A.2d 1196 (D.C. 2009) ............................................................................... 10

*Krajewski v. Gusof*,
53 A.3d 793 (Pa. Super. Ct. 2012) ......................................................................... 5

*Kryeski v. Schott Glass Techs., Inc.*,
626 A.2d 595 (Pa. Super. Ct. 1993) ....................................................................... 12

*Kurowski v. Burroughs*,
994 A.2d 611 (Pa. Super. Ct. 2010) ....................................................................... 5

*MacRae v. Afro-American Co.*,
172 F. Supp. 184 (E.D. Pa. 1959) ........................................................................... 5

*Maverick Steel Co. v. Dick Corp./Barton Malow,*
54 A.3d 352 (Pa. Super. Ct. 2012) ......................................................................... 5

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) .................................................................................................... 5

*Monge v. Univ. of Pennsylvania*, Civ. A.,
No. 22-2942, 2023 U.S. Dist. LEXIS 11212 (E.D. Pa. Jan. 23, 2023) ....................... 4

*Moore v. Cobb-Nettleton*,
889 A.2d 1262 (Pa. Super. Ct. 2005) ...................................................................... 5

ii

*Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*,
   809 A.2d 243 (Pa. 2002) ............................................................................................ 5

*San Diego v. Roe*,
   543 U.S. 77 (2004) .................................................................................................... 6

*Sedwick v. Perrine*,
   No. 515 C.D. 1992, 1993 WL 602581 (Pa. Com. Pl. June 3, 1993) ....................... 12

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ...................................................................................... 6, 19, 20

*Swift Bros. v. Swift & Sons, Inc.*,
   921 F. Supp. 267 (E.D. Pa. 1995) .......................................................................... 15

*Taylor v. Gural*,
   Civ. A. No. 23-4882, 2025 WL 638596 (E.D. Pa. Feb. 27, 2025) ........................ 5, 7

*Testing Sys., Inc. v. Magnaflux Corp.*,
   251 F. Supp. 286 (E.D. Pa. 1966) .......................................................................... 15

*Thomas Merton Ctr. v. Rockwell Int'l Corp.*,
   497 Pa. 460 (1981) ......................................................................................... 5, 7, 12

Statutes

15 U.S.C. § 45b .............................................................................................................. 7
42 Pa. C.S. § 8340.12 .............................................................................................. 17, 18
42 Pa. C.S. § 8343(a) .................................................................................................... 4
42 PA C.S. § 8340.18 .......................................................................................... 1, 18, 20

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs' lawsuit against Mr. Estrada is a prototypical strategic lawsuit against public participation ("SLAPP"). Mr. Estrada criticized Plaintiffs' legal services in online reviews and they clapped back with a lawsuit claiming defamation. This is how Plaintiffs handle dissatisfied clients. In 2025, alone, Plaintiffs filed at least ten other virtually identical lawsuits claiming defamation against former clients who posted critical online reviews. Leveraging their own lawyers and resources, Plaintiffs use SLAPP suits to muzzle former clients displeased with Plaintiffs' services. However, as demonstrated by a scathing *134-page* Report and Recommendation of the Disciplinary Board of the Pennsylvania Supreme Court, readily available online, calling Mr. Lento "***a danger to the public and to the integrity of the legal profession***" and recommending his suspension for *five-years*, Plaintiffs' professionalism and adherence to ethical standards are matters of public concern and thus statements about Plaintiffs' services are protected under the First Amendment.

As with Plaintiffs' first two complaints, the Second Amended Complaint ("SAC") should be dismissed because Mr. Estrada's statements that Plaintiffs find offensive simply express the opinion of an unsatisfied client or are undisputed facts. The statements are not capable of defamatory meaning, nor have Plaintiffs alleged any specific harm resulting therefrom. Under Pennsylvania law, where claims targeting protected speech, such as Mr. Estrada's online reviews about Plaintiffs' legal services, are dismissed for failure to state a claim, fees must be awarded under Pennsylvania's Uniform Protected Public Expression Act (the "Anti-SLAPP Law"), 42 Pa. C.S. § 8340.18.

For these reasons, as discussed more fully below, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) and fees should be awarded under that Anti-SLAPP law.

1

## FACTS ALLEGED IN THE SAC

Plaintiffs are a law firm with offices in Philadelphia, PA, and Cherry Hill, NJ, founded by Joseph D. Lento. *See* SAC, Docket No. 18, at ¶¶ 1-2. In August 2024, Mr. Estrada retained Plaintiffs' legal services in connection with a disciplinary matter at the university he attended, American University in Washington, DC. *Id*. at ¶ 8. Mr. Estrada made a retainer payment of $15,000 for that matter. *Id*. Shortly thereafter, Mr. Estrada made an additional retainer payment of $5,000 so that Plaintiffs could represent him in connection with a criminal matter relating to the university disciplinary action. *Id*. Plaintiffs claim to have assigned Terrell Ratliff to these matters, which were pending in Washington, DC, and to have explained to Mr. Estrada on November 8, 2024, that Mr. Ratliff was not licensed to practice law in Washington, DC, and would need to be admitted there on a *pro hac vice* basis. *Id*. at ¶ 10. However, the SAC omits that Mr. Ratliff also failed to appear at court conferences on September 9, October 10, and November 12. *See* SAC ¶ 15. Mr. Estrada was thus forced to attend those conferences without Mr. Ratliff or any other lawyer from Plaintiffs' firm present. *Id*. Plaintiffs claim to have performed certain work for Mr. Estrada, *id*. at ¶ 9, but the SAC omits that, as conceded in Plaintiffs' first Amended Complaint, Mr. Estrada was not satisfied with the services Plaintiffs provided and he engaged another law firm to represent him in both the university disciplinary action and the criminal matter. *See* Amended Complaint, Docket No. 11, at ¶ 15. Plaintiffs allege that in April 2025, months after their engagement with Mr. Estrada ended, they discovered reviews that Mr. Estrada posted on various websites about his experience as Plaintiffs' client that contain statements Plaintiffs assert are defamatory because, according to Plaintiff, they are "false," "misleading," "inaccurate," and "cast Plaintiffs in a false light." SAC at ¶¶ 12-37, Exhibits A.2-A.15. The SAC does not identify any specific recipient of

any alleged defamatory statement made by Plaintiff, any client or potential client lost due to Mr. Estrada's statements, or any actual or special damages caused by any such statement.

## PROCEDURAL BACKGROUND

This action began with Plaintiff's original complaint in the Philadelphia Court of Common Pleas on May 9, 2025, and was removed to this Court on May 30, 2025. The original complaint asserted claims for defamation, trade libel, tortious interference, and unjust enrichment. After the parties met and conferred about Mr. Estrada's then-forthcoming motion to dismiss at the Court's direction, *see* Docket No. 7, Plaintiffs filed an Amended Complaint withdrawing their previously asserted claim for unjust enrichment. *See* Docket No. 11.

Neither Plaintiffs' original complaint nor their Amended Complaint identified or attached the specific statements Plaintiffs claimed were defamatory. Accordingly, On June 30, 2025, Defendant moved to dismiss the Amended Complaint under Rule 12(b)(6) and applied for fees and costs pursuant to Pennsylvania's Anti-SLAPP law. *See* Docket No. 12. Defendant attached as exhibits to that motion all of the reviews of Plaintiffs' legal services that Mr. Estrada posted online and argued none of the statements contained therein were capable of defamatory meaning. *Id*.

In an Order dated December 10, 2025, the Court granted Defendant's motion to dismiss the Amended Complaint, in part, noting that "Plaintiffs concede the Amended Complaint fails to state a claim," and granted Plaintiff leave to file a Second Amended Complaint to restate their defamation and trade libel claims only. *See* Order, 12/10/25, Docket No. 17 at n.1. The Court "den[ied] Plaintiffs' motion request to amend their claim for tortious interference with business relations claim." *Id*. The Order also provided that Defendant may renew his request for fees and costs under the Anti-SLAPP law should Defendant move to dismiss the Second Amended Complaint. *Id*. Plaintiffs filed the SAC on December 11, 2025.

## LEGAL ARGUMENT

The SAC must be dismissed because Mr. Estrada's online reviews about his experience as a client of Plaintiffs do not contain words that are capable of a defamatory meaning and because the SAC asserts new claims and claims as to which the Court did not grant Plaintiffs leave to amend. Accordingly, the Complaint should be dismissed under Rule 12(b)(6) and fees should be awarded under the Anti-SLAPP Law.

## I.   LEGAL STANDARD

The standard under Fed. R. Civ. P. 12(b)(6) is settled:

> An action may be dismissed if fail[s] to state a claim upon which relief can be granted. At the motion to dismiss stage, the Court must accept factual allegations as true, but it is not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation. To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The complaint must show more than a sheer possibility that a defendant has acted unlawfully, and the factual allegations must be enough to raise a right to relief above the speculative level.

*Monge v. Univ. of Pennsylvania*, Civ. A. No. 22-2942, 2023 U.S. Dist. LEXIS 11212, at *9 (E.D. Pa. Jan. 23, 2023) (citations and quotations omitted).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION AND TRADE LIBEL

To state a claim for defamation under Pennsylvania law, the plaintiff must plead:

> (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343(a).

To state a claim for trade libel a plaintiff must allege:

(4) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the publication is false or acts in reckless disregard of its truth or falsity.

*Maverick Steel Co. v. Dick Corp./Barton Malow,* 54 A.3d 352, 354 (Pa. Super. Ct. 2012) (citing

*Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.,* 809 A.2d 243, 246 (Pa. 2002)).

"It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460, 464-65 (1981).

A statement is defamatory if it tends to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from association or dealing with him or her. The statement must do more than merely embarrass or annoy the plaintiff; it must provoke the kind of harm which has grievously fractured [one's] standing in the community of respectable society.

*Monge,* 2023 U.S. Dist. LEXIS 11212 at *11 (emphasis added) (citations and quotations omitted).

"In Pennsylvania, only statements of fact, not statements of opinion, can be the basis of defamation *per se,* defamation, and trade libel claims." *Taylor v. Gural*, Civ. A. No. 23-4882, 2025 WL 638596, at *8 (E.D. Pa. Feb. 27, 2025) (citing *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2005)); *Balletta v. Spadoni*, 47 A.3d 183, 199 (Pa. Commw. Ct. 2012). Such fact statements must be "provably false" *and* tend to grievously harm reputation, not just embarrass or annoy, to be defamatory. *Krajewski v. Gusof*, 53 A.3d 793, 803 (Pa. Super. Ct. 2012) (noting "a statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection" (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990))). The Court must consider an alleged defamatory statement "in the context of all the other words" in the challenged publication and construe them as a whole. *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. Ct. 2010) (citing *MacRae v. Afro-American Co.*, 172 F.

Supp. 184, 186 (E.D. Pa. 1959), *aff'd*, 274 F.2d 287 (3d Cir. 1960)). "Courts have not hesitated to dismiss meritless defamation claims at this stage." *Monge*, 2023 U.S. Dist. LEXIS 11212 at *10.

### a. Mr. Estrada's Statements About Plaintiffs' Legal Services are Matters of Public Concern.

Speech involves matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (first quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983); and then *San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)); *Falco v. Zimmer*, 767 F. App'x 288, 302 (3d Cir. 2019) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

The professionalism and ethics of lawyers practicing in Pennsylvania are matters of concern to the community. Accordingly, the Disciplinary Board of the Supreme Court of Pennsylvania provides the public with free and unfettered access to Pennsylvania Supreme Court and Disciplinary Board orders issued in attorney discipline and reinstatement matters, *see* https://www.padisciplinaryboard.org/cases/recent-cases (last visited Jan. 6, 2025), and the Pennsylvania Bar Association provides the public with free and unfettered access to the PBA Legal Ethics and Professional Responsibility Committee's ethics opinions, *see* https://www.pabar.org/site/For-the-Public/Ethics-Opinions-Public (last visited June 20, 2025). "The Disciplinary Board of the Supreme Court of Pennsylvania is dedicated to **protecting the public**, maintaining the integrity of the legal profession, and safeguarding the reputation of the courts." *See* https://www.padisciplinaryboard.org/.

That consumer reviews like Mr. Estrada's are also matters of public concern is demonstrated by the passing and enforcement of the federal Consumer Review Fairness Act of

2016, 15 U.S.C. § 45b, which prohibits businesses like Plaintiffs from including in their form contracts "gag clauses" that prevent clients from posting critical reviews of their services online.

### b. Mr. Estrada's Online Reviews of Plaintiffs' Legal Services Are Not Defamatory.

In *Monge*, the plaintiff filed a defamation suit against the publishers of a news article that described how the bones of one of the MOVE Bombing victims were stored in the plaintiff's – a University of Pennsylvania professor – office from 1986 to 2001, and were thereafter used as "teaching aids" during one of her courses without ever contacting the next of kin. *Monge*, 2023 U.S. Dist. LEXIS 11212 at *7-8. The plaintiff alleged defamation because the article "falsely accuse[d] [the plaintiff] of professional misconduct." *Id.* at *15. The court dismissed the Complaint because the alleged statements were substantially true and thus "not, as a matter of law, capable of defamatory meaning." *Id*. at *14; *see also Balletta v. Spadoni*, 47 A.3d 183, 199 (Pa. Commw. Ct. 2012) (affirming dismissal of defamation claim because statements that plaintiff and his associates were "anarchists," and "paper terrorists" were opinions not capable of defamatory meaning.); *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460, 462–63(1981) (dismissing complaint because it was not defamatory to create impression that members of plaintiff organization "were Communist sympathizers, associated with Communists or were in fact Communists").

In *Miller v. Masorti*, No. 4:15-CV-1754, 2016 U.S. Dist. LEXIS 62027, at *14-17 (M.D. Pa. May 11, 2016), the Court dismissed a defamation claim under Rule 12(b)(6) where statements by the defendant about the plaintiff, the District Attorney of Centre County, were posted online and deemed not defamatory by the Court. There, the defendant, also an attorney, was quoted in an online article as referring to the plaintiff as employing "unseemly and sordid tactics" and that the defendant reported the plaintiff for forgery. *Id.* at *10-11. The court, considering the defendant's statements ruled: "Statements of opinion are not defamation. Whether a particular statement is

opinion or fact is a question of law for the trial court. Although using the phrase 'unseemly and sordid tactics' may be a questionable choice of words, it is not sufficient if the words are merely embarrassing or annoying to the plaintiff." *Id.* at *17 (footnote and quotations omitted).

As demonstrated in the chart below analyzing each of the statements Plaintiffs claim are defamatory, none of them are actionable for defamation because they do not contain words that tend to harm Plaintiffs' reputation, are Defendant's opinions about Plaintiffs' services, as he perceived them, or are true.

| SAC Cite | Alleged Statement by Mr. Estrada | Capable of Defamatory Meaning? |
|---|---|---|
| SAC ¶ 12, Ex. A.2 | "I never received any clear responses" | No. Statement does not contain a provably false defamatory fact. That statement is Mr. Estrada's opinion that Plaintiffs' responses were not clear. It is also not defamatory for a client to publicly state that a lawyer's responses seemed unclear to the client. |
| SAC ¶ 12, Ex. A.2 | "My follow-up emails were upsettingly ignored." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that Plaintiffs ignored his emails. It is also not defamatory for a client to publicly state that a lawyer seemed to ignore the client's emails. |
| SAC ¶ 12, Ex. A.2 | "If they could not appear for me in DC Superior Court because they needed a DC lawyer for support, then I wish they would have informed me about this in advance, especially considering that an office address in Washington DC is listed on their website." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that Plaintiffs should have given him information about their need to submit a pro hac vice motion sooner than they did. It is also not defamatory for a client to publicly state that a lawyer should have provided more information sooner. |
| SAC ¶ 14, Ex. A.3 | "Thinking I was in good hands, Mr. Ratliff then missed three court dates in September, October, and November 2024" | No. Statement is true. Plaintiffs concede they missed the court dates. SAC ¶ 15. |
| SAC ¶ 14, Ex. A.3 | "Mr. Ratliff failed to provide a reason as to why it was taking months to enter into my case." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that Plaintiffs failed to provide sufficient information. It is not defamatory for a client to state that a lawyer failed to provide more information sooner. |
| SAC ¶ 16, Ex. A.4 | Same as Ex. A.3 | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that Plaintiffs failed to provide sufficient information. It is not defamatory for a client to |

| | | state that a lawyer failed to provide more information sooner. |
|---|---|---|
| SAC ¶ 18, Ex. A.5 | "Tom failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that the assigned attorney did not seem to know the applicable law. It is also not defamatory for a client to publicly state that a lawyer did not seem to know the law. |
| SAC ¶ 18, Ex. A.5 | "the Lento law group published a news article about my case on their website without my permission." | No. Statement does not contain a provably false defamatory fact. Moreover, Plaintiffs do not dispute this statement. |
| SAC ¶ 18, Ex. A.5 | "It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based on their lack of organization in my opinion." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that Plaintiffs seemed to lack experience and be disorganized. It is also not defamatory for a client to publicly state that a lawyer did not seem to have the experience they claimed to have. |
| SAC ¶ 20, Ex. A. 6 | "They missed three court dates" | No. Statement is true. Plaintiffs concede they missed the court dates. SAC ¶ 15. |
| SAC ¶ 20, Ex. A. 6 | "I also do not believe they have any partner attorneys in their firm who are barred in Washington, DC. I also could not find their physical law firm office at the Washington, DC address listed." | No. Statement does not contain a provably false defamatory fact. It is not defamatory for a client to publicly state that a law firm does not appear to have lawyers licensed in a particular jurisdiction or that the client could not find an office in that jurisdiction. |
| SAC ¶ 22, Ex. A.7 | "Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that the assigned attorney did not seem to know the applicable law. It is also not defamatory for a client to publicly state that a lawyer did not seem to know the law. |
| SAC ¶ 22, Ex. A.7 | "By failing to read through specific University policy, operating under retainer fees that are precluded in Washington, DC, and practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento law firm ultimately disappointed me greatly." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that the assigned attorney did not seem to know the applicable law. It is also not defamatory for a client to publicly state that a lawyer did not seem to know the law. |
| SAC ¶ 24, Ex. A.8 | "I could not locate their office in the Chrysler Building" | No. Statement does not contain a provably false defamatory fact. |
| SAC ¶ 26, Ex. A.9 | Same as Ex. A.8 | No. Statement does not contain a provably false defamatory fact. |
| SAC ¶ 28, Ex. A.10 | "It's frustrating because I trusted them to be experienced in student | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's |

| | | |
|---|---|---|
| | defense, but they proved the opposite to me based on their lack of organization in my opinion." | opinion that Plaintiffs seemed to lack experience and be disorganized. It is also not defamatory for a client to publicly state that a lawyer did not seem to have the experience they claimed to have. It is also in the context of an online review where hyperbole is to be expected. |
| SAC ¶ 30, Ex. A.11 | "I had a very negative, unprofessional, and unsatisfactory experience with Mr. Joseph Lento." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that Plaintiffs were not professional and their services were inadequate. It is also not defamatory for a client to publicly state that a lawyer lacked professionalism and provided unsatisfactory services. It is also in the context of an online review where hyperbole is to be expected. |
| SAC ¶ 30, Ex. A.11 | "He also did not make it clear to me, at any point, that he was not barred to practice law in Washington DC." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that Plaintiffs did not provide sufficient information about the licensure. It is not defamatory for a client to state that a lawyer failed to provide sufficient information. |
| SAC ¶ 30, Ex. A.11 | "I sent numerous emails to Mr. Lento over the course of a few months, which were left unanswered." | No. Statement does not contain a provably false defamatory fact. The statement is Mr. Estrada's opinion that emails were unanswered. It is not defamatory for a client to state that a lawyer failed to respond to emails. That is a matter of public concern. |
| SAC ¶ 32, Ex. A.14 | "I had a very negative, unethical, and poor experience with Mr. Joseph Lento and the Lento Law Group." | No. Statement that Plaintiffs non-refundable flat fees are unethical is true. In *In re Robert W. Mance II*, 980 A.2d 1196 (D.C. 2009), the Court held that a non-refundable flat fee or retainer violates RPC 1.15(d). The statement is Mr. Estrada's opinion that his experience with Plaintiffs was negative and poor. Whether a lawyer has violated a rule of ethics is a matter of public concern. It is also in the context of an online review where hyperbole is to be expected. |
| SAC ¶ 32, Ex. A.14 | "For both matters, I was assigned Mr. Thomas Terrill (a New York-based attorney) and Mr. Terrell Ratliff (a Pennsylvania-based attorney), both of whom are not licensed to practice law in DC. Mr. Terrill did not deliver any results for me other than advising me to not do anything." | No. Statement that Plaintiffs' lawyers were not licensed in DC is true. Plaintiffs concede that fact. *See* SAC ¶ 33. The statement is Mr. Estrada's opinion that Plaintiffs did not deliver the results he expected. It is not defamatory for a client to state that a lawyer failed to deliver results. |
| SAC ¶ 32, Ex. A.14 | "Mr. Ratliff presents another very disappointing experience: he assured me he would be on my case and represent me in court. But, | No. Statement is true. Plaintiffs concede they missed the court dates. SAC ¶ 15. The statement is also Mr. Estrada's opinion that Plaintiffs' services were disappointing. It is also not defamatory for a |

| | Terrell Ratliff missed three DC court dates for me in September, October, and November." | client to publicly state they were disappointed in their lawyer. |
|---|---|---|
| SAC ¶ 32, Ex. A.14 | "I showed up to court having to tell my judge that the Lento Law Group and Mr. Terrell Ratliff once again have failed at entering their appearance with no explanation as to why." | No. Statement is true. Plaintiffs concede they missed the court dates. SAC ¶ 15. The statement is Mr. Estrada's opinion that Plaintiffs did not provide adequate explanation. It is also not defamatory for a client to publicly state their lawyer did not enter an appearance or explain why they have not entered their appearance. |
| SAC ¶ 34, Ex. A.15 | Same as A.14 | No. Statement is true. Plaintiffs concede they missed the court dates. SAC ¶ 15. The statement is Mr. Estrada's opinion that Plaintiffs did not provide adequate explanation. It is also not defamatory for a client to publicly state their lawyer did not enter an appearance or explain why they have not entered their appearance. |
| SAC ¶ 36 | "Terrell engaged in an unauthorized practice of law." | No. Plaintiffs have not attached the statement, if it was made, to the Complaint or alleged to whom the statement was made. |
| SAC ¶ 48.viii | "In addition to being a sick pervert sex freak, he's a blatant liar." | No. Plaintiffs have not attached the statement, if it was made, to the Complaint or alleged to whom the statement was made. Moreover, the statement, if it was made, does not contain a provably false defamatory fact. It is pure opinion. |
| SAC ¶ 61.vi | Same as SAC ¶ 48.viii | No. Plaintiffs have not attached the statement, if it was made, to the Complaint or alleged to whom the statement was made. Moreover, the statement, if it was made, does not contain a provably false defamatory fact. It is pure opinion. |

As demonstrated above, the online reviews refer to various aspects of Plaintiffs' representation of Mr. Estrada, such as the attorneys who were assigned to represent him; whether they appeared for court dates; whether they provided sufficient information about their licenses; the number of telephone calls he had with them; and their responsiveness to his communications. *See id*. These are simply facts and opinions about Mr. Lento's experience that do not contain any words that could somehow be construed as harmful to Plaintiffs and that are not provably false. Such facts and are not defamation under Pennsylvania law. *See Monge, supra.*

While some of Mr. Estrada's online reviews use words like "very negative," "unethical," "disappointing," and "poor" to describe Mr. Lento's experience as Plaintiffs' client, as in *Miller*,

such words are merely Mr. Estrada's opinions of the legal services he received. While those statements may be annoying or embarrassing for Plaintiffs, in the context of the communications – websites providing reviews of lawyers and law firms – those terms when construed as a whole with the other words in Mr. Estrada's reviews do not "provoke the kind of harm which has grievously fractured one's standing in the community of respectable society," especially given that they are posted on websites where consumers expect to hear reviews – positive and negative and even sometimes hyperbolic – about attorneys' services. *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460, 464-65 (1981)("[W]ords which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. Thus, we must consider the full context of the article to determine the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate."); *Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d 595, 600 (Pa. Super. Ct. 1993) (dismissing defamation claim under Rule 12(b)(6) because even though they may have been annoying and embarrassing, statements that plaintiff was "crazy" and "emotionally unstable" were not capable of defamatory meaning); *Sedwick v. Perrine*, No. 515 C.D. 1992, 1993 WL 602581, at *2 (Pa. Com. Pl. June 3, 1993) (granting motion to dismiss, holding "making general allegations that the statements and charges in the letter are false and/or convey the impression that Plaintiffs engaged in unethical or illegal behavior does not satisfy the standard necessary to plead defamation" and directing plaintiff to "amend their Complaint to specifically identify any defamatory statements which they contend are actionable").

That Mr. Estrada's statements about Plaintiffs' professionalism and ethics are protected under the First Amendment because of their significant importance to the community is best demonstrated by the publicly available Order of the Pennsylvania Supreme Court suspending Mr.

Lento from the practice of law in Pennsylvania for *five years* based on a "Report and Recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania." *See* PA S. Ct. Order, 11/19/24, attached as Ex. A and publicly available at https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/208824.[1]

The Disciplinary Board found that Mr. Lento violated a litany of Rules of Professional Conduct in six different matters, including RPC: 1.1, 1.3, 1.2(a), 1.4, 1.5(a), 1.16(d), 5.1, 5.3, 5.5(a), 8.1(a), 8.4(a), (c)-(d). *See id*. at Disc. Bd. R&R at 102-24. As the Disciplinary Board explained:

> He engaged in wide range of misconduct involving: entering into vague fee agreements with clients for legal work that he could not or did not perform through his incompetence, lack of diligence and communication deficiencies; repeatedly filing incorrect or plainly false pleadings in state and federal courts, most egregiously in regard to his motion in support of another attorney's pro hac vice admission, where Respondent deceitfully concealed his suspension in the Eastern District; and failing to manage and supervise his lawyer and nonlawyer employees…
>
> As amply demonstrated by the evidence presented over seven days of hearing, during a two and a half year period, Respondent, a previously suspended lawyer, repeatedly **failed to represent his clients and manage his law practice in accordance with ethical standards**…
>
> Respondent's theory of practicing law is laid bare by his testimony that he used a 'pragmatic' approach to his law practice, explaining that 'certain things may not be done as required.' The record demonstrates that in fact, many 'things' were not done as required to comply with the rules of court or ethical rules. Such a confounding statement of his professional approach highlights Respondent's choice to operate a law practice outside the bounds of the rules and underscores his lack of ethical compass, **revealing him to be a danger to the public and to the integrity of the legal profession**. Respondent bore responsibility for the client matters that came to his firm. Here, he wholly abdicated that obligation and in doing so, seemingly forgot that while the practice of law is a business, the fundamental core of that business is the client. Upon this record, **we find no evidence that Respondent had genuine concern for his clients**…

---

[1] The Court may take judicial notice of these actions. Fed. R. Evid. 201.

> [W]e conclude that **Respondent is not fit to practice law**. The serious and troubling misconduct established in this record compels a lengthy suspension in order to **protect the public**, preserve the integrity of the profession and the courts, and deter other practitioners from engaging in similar misconduct.

*See id*. at 129-33.

Similarly, in a publicly available Order dated June 26, 2025, the Virginia State Bar Disciplinary Board suspended Mr. Lento from practicing law in the Commonwealth of Virginia for violating a litany of Virginia Rules of Professional Conduct in a Virginia matter, many of those rules are the same as the Pennsylvania Rules of Professional Conduct Mr. Lento was deemed to have violated by the Disciplinary Board of the Pennsylvania Supreme Court. *See* Memorandum Order of Revocation, 6/26/25, attached hereto as Ex. B and publicly available at https://vsb.org/Site/Site/news/summary/20250523-lento.aspx. The Virginia Board stated that the description of Mr. Lento's practice in the Report & Recommendations of the PA Disciplinary Board "is a perfect description of the Respondent's misconduct in" the Virginia matter. *Id*. Likewise, based on reciprocity with his suspensions from practice in Pennsylvania, Mr. Lento is currently suspended from practice in New Jersey and received a one-year suspension from the New Jersey bar in 2017 due to his one-year suspension from the Pennsylvania Bar in 2013. *See* NJ Order, 4/26/17, attached as Ex. C and publicly available at https://drblookupportal.judiciary.state.nj.us/DocumentHandler.ashx?document_id=1082848; PA S. Ct. Order, 7/7/13, attached as Ex. D and publicly available at https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/5DB2013-Lento.pdf. The Court may take judicial notice of the above disciplinary decisions. Fed. R. Evid. 201.

Moreover, nowhere in the SAC do Plaintiffs allege any actual or special harm that resulted from Mr. Estrada's statements. For example, nowhere do Plaintiffs allege that Mr. Estrada's statements prevented Plaintiffs from continuing their legal practice or caused Plaintiffs to lose any

specific potential clients. Given the public record of his suspensions, including the Disciplinary Board's scathing criticisms, Plaintiffs could not possibly point to any particular harm caused by Mr. Estrada's reviews of their services.

For these reasons, the SAC fails to state a claim for defamation and Count II of the Amended Complaint should be dismissed under Rule 12(b)(6).

### c.   The Complaint Fails to State a Claim for Trade Libel.

The SAC fails to state a claim for trade libel because it does not allege a statement by Mr. Estrada that is false and that could satisfy the other elements of a claim for trade libel. *See Maverick Steel Co., supra.* Moreover, the SAC fails to allege any pecuniary loss that could have resulted from any statement Mr. Estrada allegedly made, or that Mr. Estrada published his reviews online with a disregard for their truth or falsity. *See Testing Sys., Inc. v. Magnaflux Corp.*, 251 F. Supp. 286, 290 (E.D. Pa. 1966) (holding that a complaint that "states merely that as a result of the defendant's disparagement, [plaintiff] has suffered a loss of customers, current and prospective [and] no attempt is made to specify which customers, nor is there any effort to even approximate their value to him" failed to adequately plead a pecuniary loss sufficient to survive a motion to dismiss); *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 416 (E.D. Pa. 2009) ("Pennsylvania law requires that a plaintiff claiming commercial disparagement plead damages with considerable specificity, by setting out in its complaint the names of the customers lost and financial loss resulting from the tort." (internal quotation marks omitted) (quoting *Swift Bros. v. Swift & Sons, Inc.*, 921 F. Supp. 267, 276 (E.D. Pa. 1995))); *Corr. Med. Care, Inc. v. Gray,* Civ. A. No. 07–2840, 2008 WL 248977, at * 17 (E.D. Pa. Jan. 30, 2008) (same).

For these reasons, the SAC fails to state a claim for trade libel and Count III of the Amended Complaint should be dismissed.

**III.** **PLAINTIFFS' OTHER CLAIMS SHOULD BE DEEMED WAIVED AND BARRED BY THE COURT'S ORDER DATED DECEMBER 10, 2025**

The SAC asserts three new claims and one claim that was explicitly dismissed by the Order dated December 10, 2025. Those claims should be deemed waived and barred by that Order.

Plaintiffs' Amended Complaint asserted three causes of action, defamation, trade libel, and tortious interference with contract. *See* Docket No. 11. In seeking leave to file a second amended complaint, Plaintiffs asserted that leave should be granted because "***the proposed Second Amended Complaint will not add any new theories or claims against the Defendant*** … and ***merely cures the deficiencies in Defendant's Rule 12 Motion***." *See* Docket No. 15 at 7. In disregard of that representation to the Court, the SAC includes claims for tortious interference with contract, breach of contract, unjust enrichment, and declaratory relief.

In granting Plaintiffs' motion for leave to file a second amended complaint, in part, the Court "den[ied] Plaintiffs' request to amend their claim for tortious interference with business relations claim." Accordingly, that claim is explicitly barred and must be dismissed. Plaintiffs' claims for breach of contract, unjust enrichment and declaratory judgment should be deemed waived and barred by the Order granting leave to assert claims for defamation and trade libel only. *See Wolfe v. City of Sunbury*, No. 4:24-CV-00251, 2025 U.S. Dist. LEXIS 136992, at *7-8 (M.D. Pa. July 18, 2025).

In *Wolfe*, the plaintiffs were given the opportunity to amend their original complaint twice after the Court admonished the plaintiff for not addressing defendant's qualified immunity arguments raised in Rule 12 motions. When Defendant moved to dismiss on qualified immunity grounds a third time, and the plaintiffs again did not respond to that argument, the Court exercised its discretion and deemed the claim waived given the Court's admonishments and the opportunities plaintiff had to heed them. As the Court held:

> [G]iven the ample warnings this Court provided Plaintiffs, Defendants' consistent attempts to explicitly raise this affirmative defense through multiple sets of briefings, and the multifarious opportunities Plaintiffs have had to correct deficiencies in their complaints, it is appropriate to find the underlying claim waived and grant the motion to dismiss on this basis.

*Id*.

Similar discretion is warranted here. Like the plaintiffs in *Wolfe*, Plaintiffs here have had ample opportunity to assert claims for breach of contract, unjust enrichment, and declaratory relief. In fact, their original complaint included a claim for unjust enrichment, but that claim was not asserted in their Amended Complaint. And as in *Wolfe*, in granting Plaintiffs leave to file a second amended complaint, this Court admonished Plaintiffs that "**before filing their Second Amended Complaint, and in all future filings, the Court strongly advises Plaintiffs to review the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Pennsylvania, this Court's Policies and Procedures, and this Circuit's relevant case law.**" *See* Order, 12/10/25, Docket No. 17. However, Plaintiffs ignored that admonishment by reasserting explicitly dismissed claim for tortious interference and by asserting new claims that Plaintiffs stated they would not bring if the Court granted leave to file a second amended complaint. On these facts, the Court should deem Plaintiffs' claim for tortious interference barred and Plaintiffs' claims for breach of contract, unjust enrichment and declaratory judgment waived, and all of those claims should be dismissed with prejudice.

## FEES SHOULD BE AWARDED UNDER THE ANTI-SLAPP LAW

The Anti-SLAPP Law was enacted in Pennsylvania because "[t]here has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression," and "participation in matters of public significance... should not be chilled through abuse of the judicial process." 42 Pa. C.S. § 8340.12. To achieve its stated purpose, the Anti-SLAPP Law: "(i) grants immunity to those groups or parties exercising the rights to protected public expression; and

(ii) awards attorney fees to parties that are forced to defend against meritless claims arising from the exercise of the rights to protected public expression." *Id*. The Anti-SLAPP Law is to be construed broadly. *Id*. ("Broad construction of this subchapter will implement the goals").

The Anti-SLAPP Law grants immunity to "protected public expression," which includes a person's freedom of speech "on a matter of public concern…guaranteed by the First Amendment to the Constitution of the United States." *Id*. at § 8340.13. Under the Anti-SLAPP Law, "a person is immune from civil liability for a cause of action based on protected public expression if:

> (1) The party asserting the cause of action based on protected public expression fails to:
>
>> (i) establish a prima facie case as to each essential element of the cause of action;
>>
>> *or*
>>
>> ***(ii) state a cause of action upon which relief can be granted***.
>
> (2) There is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part."

*Id*. at § 8340.15 (emphasis added).

If the party asserting immunity under the Anti-SLAPP law succeeds on a motion to dismiss for failure to state a claim under Rule 12(b)(6), such that "the party is immune under section 8340.15 (relating to grant of immunity), the court shall award the party attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action." *Id*. at § 8340.18.

In *Paucek, et al. v. Shaulis*, No. 1:24-CV-09807, (D.N.J. May 6, 2025), Judge Renee M. Bumb, Chief Judge of U.S. District Court for the District of New Jersey (Camden), sitting in diversity, applied New Jersey's anti-SLAPP law and awarded fees to a defendant who successfully moved to dismiss under Rule 12(b)(6). Like Pennsylvania's anti-SLAPP law, New Jersey's anti-

SLAPP law provides for an award of fees where the allegations in a complaint fail to state a claim for defamation. Consequently, Judge Bumb reasoned that a dismissal under Rule 12(b)(6) warranted fee-shifting under New Jersey's anti-SLAPP law.

As set forth herein, Mr. Estrada's statements about Plaintiffs' legal services are matters of public concern. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (speech involves matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."); *Falco v. Zimmer*, 767 F. App'x 288, 302 (3d Cir. 2019) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453(2011)). Indeed, reports about the professionalism and ethics of lawyers are readily available online in order to protect the public. *See* https://www.padisciplinaryboard.org/ ("The Disciplinary Board of the Supreme Court of Pennsylvania is dedicated to protecting the public, maintaining the integrity of the legal profession, and safeguarding the reputation of the courts"); *see also* Disciplinary Board Report and Recommendation at 129-33 (calling for Lento's current five-year suspension and declaring him "a danger to the public and to the integrity of the legal profession").

Here, the Complaint is precisely the type of meritless defamation claim the Anti-SLAPP Law is intended to deter. Mr. Estrada's online reviews of Plaintiffs' legal services are matters of public concern and protected under the First Amendment of the U.S. Constitution and the Anti-SLAPP Law. Plaintiffs sought to muzzle Mr. Estrada by filing a frivolous defamation claim. As demonstrated by the eighteen other similar lawsuits[2] Plaintiffs have filed in the past few years, *see*

---

[2] *See Lento Law Group v. Schaffer*, Case Id. No. 251201836 (Phila. Ct. Comm. Pls., Dec. 13, 2025); *Lento Law Group v. Jones*, Case Id. No. 251201833 (Phila. Ct. Comm. Pls., Dec. 13, 2025); *Lento Law Group v. Bahram*, Case Id. No. 251103741 (Phila. Ct. Comm. Pls., Nov. 26, 2025); *Lento Law Group v. Christensen*, Case Id. No. 251002164 (Phila. Ct. Comm. Pls., Oct. 20, 2025); *Lento Law Group v. Yu*, Case Id. No. 250503786 (Phila. Ct. Comm. Pls., Aug. 21, 2025); *Lento*

*supra*, that is their practice any time a former client criticizes their services online. Plaintiffs leverage their own lawyers to file meritless lawsuits to prevent the public from learning about their unethical and unprofessional practices. This action, and those actions, are quintessential SLAPP suits. Clearly, Plaintiffs are not taking seriously the Disciplinary Board's criticisms of Mr. Lento.

Because the Amended Complaint targets speech that is protected under the Anti-SLAPP Law, online reviews of legal services, and because the Complaint fails to state a claim for defamation under Rule 12(b)(6), Mr. Estrada's online reviews of Plaintiffs' legal services should be granted immunity under Section 8340.15 of the Anti-SLAPP Law and fees should be awarded to Mr. Estrada under Section 8340.18 of the Anti-SLAPP Law.

## <u>CONCLUSION</u>

WHEREFORE the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and Defendant shall be awarded fees and costs under Pennsylvania's Uniform Public Expression Protection Act, 42 Pa. C.S. § 8340.18.

---

*Law Group v. Anozie*, Case Id. No. 250503791 (Phila. Ct. Comm. Pls., May 30, 2025); *Lento Law Group v. Sejour*, Case Id. No. 250503782 (Phila. Ct. Comm. Pls., May 30, 2025); *Lento Law Group v. Coombes*, Case Id. No. 250503786 (Phila. Ct. Comm. Pls., May 30, 2025); *Lento Law Group v. Feuerbon*, Case Id. No. 250201901 (Phila. Ct. Comm. Pls., Feb. 12, 2025); *Lento Law Group v.* Walker, Case Id. No. 250202270 (Phila. Ct. Comm. Pls., Feb. 17, 2025); *Lento Law Firm v. John Does 1-8*, Case Id. No. 231102406 (Phila. Ct. Comm. Pls., Nov. 12, 2024); *Lento Law Group v. Ibrahim*, Case Id. No. 240400659 (Phila. Ct. Comm. Pls., Apr. 4, 2024); *Lento Law Firm v. Pandey*, Case Id. No. 231100674 (Phila. Ct. Comm. Pls., Nov. 4, 2023); *Joseph D. Lento, Esq. v. Myers*, Case Id. No. 230900741 (Phila. Ct. Comm. Pls., Sept. 8, 2023); *Lento Law Group v. Hendrickson*, (Docket No. MER-L-668-24); *Lento Law Group v. Waddel* (BUR-L-2409-22) and *Lento Law Group v. Little* (BUR-L-908-24). The Court may take judicial notice of these actions. Fed. R. Evid. 201.

Dated: January 12, 2026            By: */s/ Seth A. Goldberg*
                                   Seth A. Goldberg, Esq. (92478)

                                   PASHMAN STEIN WALDER HAYDEN
                                   A Professional Corporation
                                   2005 Market Street, Suite 3150
                                   Philadelphia, PA 19103
                                   sgoldberg@pashmanstein.com
                                   (267) 319-7762

                                   Bruce S. Rosen, Esq. (*pro hac vice* forthcoming)
                                   PASHMAN STEIN WALDER HAYDEN
                                   A Professional Corporation
                                   Court Plaza South
                                   21 Main Street, Suite 200
                                   Hackensack, NJ 07601
                                   (201) 488-8200

                                   *Attorneys for Defendant Kris Emmanuel Estrada*

**CERTIFICATE OF SERVICE**

I, Seth Goldberg, hereby certify that on January 12, 2026, the above document was served on counsel for the Plaintiffs via electronic mail.

*/s/ Seth Goldberg*
Seth Goldberg