**VIRGINIA:**

## BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

**IN THE MATTER OF**
**JOSEPH D. LENTO**                                       **VSB DOCKET NO.: 24-090-132162**

### MEMORANDUM ORDER OF REVOCATION

A panel of the Virginia State Bar Disciplinary Board (the "Board") heard this matter on May 16, 2025. The panel members included Alison G. M. Martin, Chair; Yvonne S. Gibney; Mary Beth Nash; Theodore Smith, Lay Member; and Reiss F. Wilks. At the outset of the hearing, the Chair inquired of each member of the panel whether any of them had any personal or financial interest that might affect or reasonably be perceived to affect their ability to be impartial in this matter. Each member, including the Chair, responded in the negative.

Edward J. Dillon, Deputy Bar Counsel, represented the Virginia State Bar ("Bar" or "VSB"). Dennis John Quinn and Anthony C. Gunst, IV, appearing *pro hac vice*, represented Respondent Joseph D. Lento ("Respondent"), who appeared by video conference.

Court Reporter Beverly S. Horne, Chandler & Halasz, P.O. Box 1975, Mechanicsville, Virginia 23116, (804) 730-1222, after being duly sworn by the Chair, reported this matter and transcribed the proceedings.

The Clerk of the Disciplinary System ("the Clerk") timely sent all legal notices of the date and place in the manner prescribed by the *Rules of the Supreme Court of Virginia*, Part Six, §IV, ¶¶13-12.C and 13-18.C.

This matter came before the Board on the Subcommittee Determination (Certification) of the Ninth District Subcommittee, dated February 7, 2025 (the "Certification"), in accordance with

Part Six, §IV, ¶13-18 of the *Rules of the Supreme Court of Virginia*, involving misconduct charges against the Respondent.

Prior to the hearing, at the Pre-Hearing Conference, over objections from the Respondent, the Chair ruled that VSB Exhibits 1-46 would be admitted into evidence. The Chair also ruled, over objections from the Bar, that Respondent's Exhibits 1-14 would be admitted into evidence. There were no objections from either party to the proposed witnesses.

During the misconduct phase of the hearing the Board heard testimony from the following witnesses, all of whom testified under oath and by video conference: Rodney J. Guyton, Lawrence Katz, Joseph D. Lento, and McGavock D. Reed, Jr. In addition, the Board considered the Affidavit of John E. Groff, which it received into evidence as Respondent's Exhibit 15 admitted over objection.

At the conclusion of the Bar's presentation of its case, Respondent moved to strike the following alleged violations of the Rules of Professional Conduct: Rule 1.1, Rule 1.3(a) and (b), Rule 1.4(a) and (b), Rule 1.5(a), Rule 5.1(a) and (c), and Rule 8.4(b). Following the Board's consideration of the motion, the Chair announced that the Board would take the motion under advisement. The Respondent then presented his case.

The Board considered the witnesses' testimony and the exhibits; heard argument of counsel for the Bar and for Respondent; and met in private to consider its decision.

## MISCONDUCT

The Board made the following findings of fact based on clear and convincing evidence:

1.    Respondent is not admitted to practice law in the Commonwealth of Virginia.

2.    Respondent was licensed to practice law in the State of New Jersey and the State of New York at all times relevant to the allegations of the Certification. Respondent was licensed

to practice law in the Commonwealth of Pennsylvania until November 19, 2024. Respondent began practicing law in 2008.

3.      Respondent is the founding attorney and a majority shareholder of the Lento Law Group, P.C. Between 2008 and December 2024, he was the sole owner and managing attorney of the Lento Law Firm, a "separate, complementary law practice to Lento Law Group."[1] Lento Law advertises and markets itself as "a national law firm" that specializes in education matters. In 2024 Lento Law advertised that it had a Virginia office. Respondent works primarily out of the firm's Pennsylvania office.

4.      On or about March 4, 2024, Rodney Guyton communicated with Lento Law about representing him in a case Guyton had filed in Virginia, *pro se*, against Liberty University ("Liberty"), which case was then pending in Lynchburg General District Court. Lento Law responded the same day, quoting a "non-refundable (earned upon receipt) $350 consultation fee[.]" Guyton immediately paid the quoted fee and received an email from Respondent that requested information about Guyton's case and transmitted a Consultation Engagement Letter, which Respondent prepared.

5.      By email sent on March 9, 2024, Respondent arranged a telephone consultation with Guyton. Respondent and a non-attorney employee of Lento Law, John Groff, participated in the consultation with Guyton on March 11, 2024. Guyton understood that Respondent was a licensed attorney and capable of representing Guyton in Virginia. Respondent did not tell Guyton that he was not licensed in Virginia.

6.      During their consultation Guyton informed Respondent of the upcoming deadlines in his case against Liberty. As a result, Respondent was aware, in particular, that Guyton had a

---

[1] Both Lento Law Group and Lento Law Firm will be referred to as "Lento Law" throughout this memorandum order, as the two entities are factually indistinguishable for purposes of the facts underlying the Certification.

3

court-imposed deadline to file a Bill of Particulars in just over three weeks. In his testimony Respondent considered Guyton's approaching court deadline as a factor in his decision whether Lento Law could handle Guyton's representation. Respondent is the person in the firm who decides which cases to take and the amount of the fee the firm will charge a client.

7.     On March 12, the day after their consultation, Respondent sent Guyton an email that included an engagement letter. It stated that Lento Law would represent Guyton in his claims against Liberty in exchange for an up-front "non-refundable" $15,000 payment to cover "costs and expenses," in addition to a percentage of any recovery. The engagement letter further explained that the $15,000 payment "is fully earned upon receipt." Respondent had not asked a licensed Virginia attorney to review the engagement letter before presenting it to Guyton. Guyton signed the engagement letter and paid the $15,000 fee the same day. Respondent's March 12 email was the last time Respondent ever communicated with Guyton.

8.     The following day, Guyton sent an email to Respondent to which he attached pleadings and other documents pertinent to his case against Liberty. On March 25, 2024, Guyton emailed Lento Law, stating that he had "yet to hear anything from the team after [he] submitted relevant materials and a follow up e-mail. The submission deadline [for filing a Bill of Particulars] is 4/3/24; please advise."

9.     Respondent testified that the Lento Law attorney that is assigned to handle a case is the attorney who will prosecute the case "in all respects." However, the day after his consultation with Respondent, Guyton received an email from Lento Law, advising him that his case had been assigned to Angela Tate Martinez, an attorney who was not licensed to practice law in Virginia. Ms. Martinez could not have prosecuted Guyton's case in any respect. Moreover, within days after this "assignment," Martinez's employment with Lento Law had terminated.

4

10.     On April 3, 2024 – the due date for the Bill of Particulars – Guyton received a voicemail message from Randall Stone, an attorney with Lento Law. Stone was the only attorney with Lento Law who was admitted to practice in Virginia. Stone asked for a calculation of Guyton's damages arising from his claim against Liberty. Guyton responded by text message, advising Stone that his total damages were $16,416. Because of Stone's schedule, Guyton was not able to speak with Stone by phone until April 9, 2024, when Stone told Guyton that he could not represent Guyton. Stone told him that although Stone was licensed to practice in Virginia, he was located in Arizona and the amount of damages Guyton was seeking was too small for Stone to handle Guyton's case from out of state. Stone advised Guyton it might be best to allow the case to be dismissed and possibly consider refiling suit in another court. [2]  However, Stone did not file a Bill of Particulars or otherwise act on Guyton's behalf.

11.     On April 10, 2024, after Stone declined to handle Guyton's case, Guyton sent an email to Respondent and Lento Law raising the concern that no one from Lento Law had contacted him about filing the Bill of Particulars which was one week overdue. Two days later, Guyton sent an email to Respondent noting that Stone had declined to represent Guyton and added, "I am now nine days overdue and do not have an assigned attorney on my case." Respondent did not know that Stone had declined to handle Guyton's case until he received this email. Nevertheless, neither he nor anyone else from Lento Law responded to Guyton or acted to protect his interests when they received this news.

12.     On April 16, 2024, Liberty moved the court to dismiss Guyton's case because Guyton had not filed a Bill of Particulars by the April 3 deadline. The court granted the motion and dismissed Guyton's case on April 18, 2024. Guyton sent an email to Respondent four days

---

[2] Guyton's testimony reflects that this is the only advice he received from the Lento Law firm on his case.

later to advise of Liberty's motion to dismiss. He sent another email to Respondent the following day to advise him that the court had dismissed the case and to request Respondent's advice. Neither Respondent nor anyone else from Lento Law responded to these emails.

13.     Although Respondent offered no responses to Guyton's emails, Respondent's internal emails at Lento Law show that he understood that the growing disaster of Guyton's case was becoming a problem for Respondent himself. His prosaic assessment was that the court would likely dismiss Guyton's case "with prejudice and then I will be farked [sic]."

14.     Respondent's claims that he or Lento Law attempted to retain a Virginia attorney to handle Guyton's representation after Stone declined to do so were not supported by credible evidence.

15.     At no time during Respondent's representation of Guyton did Respondent or another attorney with Lento Law perform any work or incur any costs or expenses on Guyton's behalf. In an internal email Respondent admitted that Guyton "really should get his money back b/c [Stone] punted the case/did nothing . . ." Yet, in the two months after Respondent learned that Lento Law's only Virginia attorney would not handle Guyton's representation, Respondent did not return Guyton's $15,000.

16.     After many unanswered communications to Respondent and others at Lento Law, which included multiple telephone calls and emails, Guyton filed the present bar complaint. He also engaged Virginia attorney McGavock D. Reed, Jr., Esq. to assist him in recovering his $15,000 from Lento Law. Reed sent a demand letter to Respondent requesting the return of Guyton's unearned fee on June 11, 2024, but received no response.

17.     After Reed filed a lawsuit against Lento Law to recover Guyton's $15,000, Lento Law's legal counsel contacted Reed. Over the next ten months, Lento Law, through its counsel,

negotiated the amount Lento Law would agree to return to Guyton. After having kept Guyton's

money for well over a year, Lento Law finally refunded Guyton the original $15,000 advancement

of "costs and expenses", on or about April 21, 2025.

18. Guyton paid Reed legal fees in the amount of $4250 to collect the $15,000 from Lento

Law.

## RULES VIOLATED

Pursuant to the provisions of *Rule 8.5* of the *Virginia Rules of Professional Conduct* [3] the

Board concludes that Respondent is subject to the Board's authority because he held himself out

as providing, and offered to provide, legal services in Virginia.[4] The Board further finds that

because the alleged misconduct occurred "in the course of providing, holding out as providing, or

offering to provide legal services in Virginia," the *Virginia Rules of Professional Conduct* ("*Rules*"

or "*Rule*") apply, and the Board finds by clear and convincing evidence that the conduct of

---

[3] *Rule 8.5* provides as follows:

(a) Disciplinary Authority. A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of Virginia, regardless of where the lawyer's conduct occurs. A lawyer not admitted in Virginia is also subject to the disciplinary authority of Virginia if the lawyer provides, holds himself out as providing, or offers to provide legal services in Virginia. By doing so, such lawyer consents to the appointment of the Clerk of the Supreme Court of Virginia as his or her agent for purposes of notices of any disciplinary action by the Virginia State Bar. A lawyer may be subject for the same conduct to the disciplinary authority of Virginia and any other jurisdiction where the lawyer is admitted.

(b) Choice of Law. In any exercise of the disciplinary authority of Virginia, the rules of professional conduct to be applied shall be as follows:

(1) for conduct in connection with a proceeding in a court, agency, or other tribunal before which a lawyer appears, the rules to be applied shall be the rules of the jurisdiction in which the court, agency, or other tribunal sits, unless the rules of the court, agency, or other tribunal provide otherwise;

(2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred; and

(3) notwithstanding subparagraphs (b)(1) and (b)(2), for conduct in the course of providing, holding out as providing, or offering to provide legal services in Virginia, the Virginia Rules of Professional Conduct shall apply.

[4] Respondent has noted no objection to the Bar's disciplinary authority over him in this matter.

7

Respondent set forth above constitutes misconduct in violation of the following provisions of the *Rules*:

### Rule 1.1    Competence

**A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.**

Respondent violated this Rule by accepting Guyton's $15,000, agreeing to represent Guyton in his Virginia lawsuit against Liberty, failing to take actions to ensure that a licensed Virginia attorney was handling Guyton's representation and taking appropriate steps to avoid the dismissal of the case, failing to withdraw promptly from Guyton's representation when he had no Virginia attorneys to handle the representation, and failing to communicate with Guyton at any time after March 12, 2024.

### Rule 1.3    Diligence

**(a)    A lawyer shall act with reasonable diligence and promptness in representing a client.**
**(b)    A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services but may withdraw as permitted under Rule 1.16.**

Respondent violated Rule 1.3 (a) and (b) by agreeing to accept Guyton's representation but failing to provide Guyton with a licensed Virginia attorney who would carry out that representation. Respondent initially assigned an attorney who was not licensed in Virginia to represent Guyton who left Lento Law days later. Respondent assigned no one to represent Guyton until the day Guyton's Bill of Particulars was due, when Lento Law's only Virginia attorney – Randall Stone – was assigned to handle Guyton's representation. Respondent failed to ensure that Stone was able to provide those legal services, however, and by April 12, 2024, Respondent either knew or should have known that Stone had declined to represent Guyton. Yet, Respondent took

8

no action to find a licensed Virginia attorney to represent Guyton at any time before Respondent finally refunded Guyton's advanced payment a year later.

**Rule 1.4      Communication**

**(a)      A lawyer shall act with reasonable diligence and promptness in representing a client.**

**(b)      A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.**

Respondent violated Rule 1.4 (a) and (b) by failing to communicate with Guyton at any time after March 12, 2024. At minimum Respondent should have communicated with Guyton about the attorney assignments for Guyton's representation; he should have responded when Guyton raised concerns about the missed deadline, Liberty's motion to dismiss, and the dismissal of Guyton's case; and he should have communicated when he learned that Stone would not handle Guyton's representation by promptly returning Guyton's fee and withdrawing from the representation.

**Rule 1.5      Fees**

**(a)      A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:**

**(1)      The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;**
**(2)      The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;**
**(3)      The fee customarily charged in the locality for similar legal services;**
**(4)      The amount involved and the results obtained;**
**(5)      The time limitations imposed by the client or by the circumstances;**
**(6)      The nature and length of the professional relationship with the client;**
**(7)      The experience, reputation, and ability of the lawyer or lawyers performing the services; and**
**(8)      Whether the fee is fixed or contingent.**

9

Respondent violated this Rule by charging and accepting from Guyton a nonrefundable fee of $15,000, in addition to a percentage of any recovery, for which Lento Law performed no services and incurred no costs or expenses.

**Rule 1.15      Safekeeping Property**

. . .

**(b) <u>Specific Duties</u>: A lawyer shall:**

. . .

**(4)      Promptly pay or deliver to the client or another as requested by such person the funds, securities, or other properties in the possession of the lawyer that such person is entitled to received[.]**

Respondent violated this Rule by accepting from Guyton a fee of $15,000. However, he performed no work and incurred no expenses on Guyton's behalf. Respondent further failed to refund any portion thereof for more than a year, even after Guyton, through his legal counsel, had made a written demand to Respondent ten months earlier for the fee to be refunded.

**Rule 1.16      Declining or Terminating Representation**

**(a)      Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:**
**(1)      The representation will result in violation of the Rules of Professional Conduct or other law;**
. . .

**(d)      Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, refunding any advance payment of fee that has not been earned and handling records as indicated in paragraph (e).**

Respondent violated subsection (a) of this Rule by failing to withdraw from Guyton's representation when no attorney with Lento Law entered an appearance on Guyton's behalf in his lawsuit against Liberty and by continuing Guyton's representation

10

while failing to provide Guyton competent representation (violating Rule 1.1), failing to provide him diligent representation (violating Rule 1.3), failing to communicate with Guyton (violating 1.4), and charging Guyton an unreasonable fee (violating Rule 1.5)

Respondent violated subsection (d) of this Rule by failing to refund Guyton's $15,000 fee in April 2024, as soon as Respondent knew he had no licensed Virginia attorney on his staff who could represent Guyton in his lawsuit against Liberty. Lento Law had not earned the fee and had no right to retain it for more than a year.

**Rule 5.1    Responsibilities of Partners and Supervisory Lawyers**

**(a)    A partner in a law firm, or a lawyer who individually or together with other lawyers possesses managerial authority, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.**

As sole owner and managing attorney of Lento Law, as the only attorney who arranged for and conducted Guyton's initial consultation with Lento Law, and as the only attorney in the firm who decides which cases the firm will take and the amount of the fee to be charged, Respondent possessed managerial authority at Lento Law.  Respondent violated Rule 5.1(a) by failing to take any action to ensure that the firm had a licensed Virginia lawyer who was available and willing to handle Guyton's representation and by failing to ensure that the terms of the engagement letter with Guyton complied with Virginia's *Rules*.

**Rule 8.4    Misconduct**

**It is professional misconduct for a lawyer to do any of the following:**

. . .

**(b)    Commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness to practice law; [.]**

11

Respondent violated this Rule by deliberately retaining a nonrefundable $15,000 fee for over a year that he knew that his firm had not earned and that he admitted should be returned to Guyton. He further violated this Rule by deliberately failing to respond to Guyton's emails and calls, while his internal emails reflected his awareness of Guyton's communications and the serious problems he and his firm had created for Guyton.

The Board found insufficient evidence to support a finding that Respondent violated Rule 5.1(c).

## SANCTION PHASE

After the Board announced its findings by clear and convincing evidence, it received further evidence and argument from the Bar and Respondent regarding aggravating and mitigating factors applicable to the appropriate sanction for the misconduct underlying the Rules violations, including Respondent's prior disciplinary record. Respondent's Virginia disciplinary record, admitted as VSB Exhibit 47, reflected no prior disciplinary history. However, Respondent's disciplinary history in Pennsylvania was significant.

In an Order issued by the Supreme Court of Pennsylvania on July 17, 2013, Respondent received a one-year suspension from the practice of law as a result of his violation of Pennsylvania Rules of Professional Conduct ("PA Rule") 5.4(a) (prohibiting the sharing of legal fees with a nonlawyer), PA Rule 7.3(a) (prohibiting the solicitation of prospective clients by telephone, in person, or real-time electronic communication), and PA Rule 8.4(a),(c), and (d) (stating that it is professional misconduct to violate the Rules of Professional Conduct, to engage in conduct involving dishonesty, and to engage in conduct prejudicial to the administration of justice). The Order, which was admitted as VSB Exhibit 48, described Respondent's underlying misconduct as

follows: "From mid-November 2011 to mid-January 2012, Respondent initiated two schemes to pay government employees to assist him in obtaining new clients."

On November 19, 2024, the Supreme Court of Pennsylvania issued an order suspending Respondent from the practice of law for five years. The Order, which was admitted as VSB Exhibit 49, was based on misconduct by Respondent in six different matters he and his firm handled. The Court found that Respondent's misconduct in the Pennsylvania matters violated PA Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.16(d), 5.1(a), and 8.4(c)[5]. The Pennsylvania Court also found that Respondent violated Rule 5.3, Rule 5.5, and Rule 8.1. The Order characterized Respondent's misconduct as follows:

> The facts of this matter make plain that in the six matters at issue, Respondent placed profit over professionalism. He employed a predatory style of taking on client representation, failing to ascertain whether the client's goals could be accomplished, and nevertheless accepting legal fees. Respondent would either pass off the matter to employees without supervising the work to ensure that it was handled properly, or himself fail to do the work for which he and his firm had been retained.

The Court's description of Respondent's handling of the six cases is a perfect description of Respondent's misconduct in Guyton's representation.

The fallout from Respondent's misconduct includes Guyton's need to hire McGavock Reed to seek a refund of his $15,000 from Respondent. Guyton incurred $4,250 in attorney's fees for Reed's services. Guyton's lawsuit against Liberty has been dismissed because of Respondent's misconduct and until Respondent finally returned Guyton's fee within weeks of this hearing, Guyton was unable to take any further steps to pursue Liberty.

## DISPOSITION

---

[5] Pennsylvania's Rule 8.4(c) is the same as Virginia's Rule 8.4(b).

After considering the exhibits, testimony, and arguments of counsel, the Board was guided by Standard 4.11 of the Annotated Standards for Imposing Lawyer Sanctions, 2nd Edition (ABA 2019), which provides that "disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Here, Respondent retained Guyton's $15,000 for more than a year during which time (1) he either knew or should have known that his firm had no licensed Virginia attorney to perform the services Guyton had engaged Respondent's firm to perform, (2) he admitted in internal emails that Guyton's fee should be returned to him, and (3) he retained Guyton's funds long after his firm had utterly failed to perform any services on Guyton's behalf. By retaining the funds belonging to Guyton, Respondent denied Guyton the ability to pursue any possible action against Liberty.

The Board found no mitigating factors.

The Board considered as aggravating factors the following:

(1)     Respondent's prior disciplinary offenses. Respondent's prior one-year suspension and current five-year suspension reflect pervasive, serious, and troubling misconduct.

(2)     Respondent's dishonest motive, as reflected in his failure to return Guyton's fee for more than a year.

(3)     Respondent's pattern of misconduct. Respondent's Rule violations in this case are nearly identical to the Rule violations identified in the Supreme Court of Pennsylvania's November 19, 2024 Order, which chronicled Respondent's misconduct in six different matters.

(4)     Respondent's multiple disciplinary offenses.

(5)     Respondent's refusal to acknowledge the wrongful nature of his conduct. Respondent takes no responsibility as a managing attorney for supervising his attorneys, but places blame instead on those attorneys.

14

(6)     Respondent's substantial experience in practicing law. After 17 years of practicing law, in which he has received sanctions for his misconduct, Respondent appears to have learned little from that experience.

At the conclusion of the evidence in the sanction phase ·of the proceeding, the Board recessed to deliberate. Following deliberation of the appropriate sanction, the Board reconvened and announced its decision. Having considered the evidence presented and argument of counsel, it is

ORDERED that Respondent's privilege to practice law in the Commonwealth of Virginia is hereby REVOKED, effective May 16, 2025.

It is further ORDERED that Respondent shall comply with the requirements of Part Six, §IV, ¶13-29 of the *Rules of the Supreme Court of Virginia*. The Respondent shall forthwith give notice by certified mail, return receipt requested, of the revocation of his privilege to practice law in the Commonwealth of Virginia to all clients for whom he is currently handling matters and to all opposing attorneys and presiding judges in pending litigation. The Respondent shall also make appropriate arrangements for the disposition of matters then in his care and conformity with the wishes of his clients. The Respondent shall give such notice within fourteen (14) days of the effective date of this order, and he shall make such arrangements as are required herein within forty-five (45) days of the effective date of the revocation. The Respondent shall also furnish proof to the Bar within sixty (60) days of the effective date of the revocation that such notices have been timely given and such arrangements made for the disposition of matters.

It is further ORDERED that pursuant to Part Six, §IV, ¶13-9. E of the *Rules of the Supreme Court of Virginia*, the Clerk shall assess costs against the Respondent.

15

An attested copy of this Memorandum Order of Revocation will be mailed to the Respondent by first-class mail to Joseph D. Lento, The Lento Law Firm, 1650 Market Street, Ste. 3600, Philadelphia, PA 19103, and by email to jdlento@lentolawgroup.com; and to Dennis John Quinn, Respondent's Counsel, by first-class mail, at Carr Maloney P.C., 2000 Pennsylvania Avenue, NW, Suite 8001, Washington, D.C. 20006, and by email to Dennis.Quinn@carrmaloney.com; and to Anthony C. Gunst, IV, Respondent's Counsel *pro hac vice*, by first-class mail, at Nissenbaum Law Group, P.C.; 2400 Morris Avenue, Suite 301, Union, New Jersey 07083, and by email to ag@gdnlaw.com; and by first-class mail to Muriel-Theresa Pitney, Clerk of the Supreme Court of Virginia, 100 N. 9th Street, 5th Floor, Richmond, Virginia 23219; and via hand delivery to Edward J. Dillon, Deputy Bar Counsel, Virginia State Bar, 1111 E. Main Street, Suite 700, Richmond, Virginia 23219.

ENTERED THIS 26 DAY OF JUNE 2025

VIRGINIA STATE BAR DISCIPLINARY BOARD

Alison G.M. Martin
Second Vice Chair

16