UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LENTO LAW GROUP PC AND LENTO LAW FIRM,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>KRIS EMMANUEL ESTRADA<br><br>　　　　Defendants. | Civil Action No. 25-2763 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER FED.R. CIV. P. 12(B)(6) AND APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 PA C.S. § 8340.18**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

PERTINENT UNDISPUTED FACTS BASED ON OPPOSITION BRIEF ................................ 1

LEGAL ARGUMENT .................................................................................................................. 2

    I.    MR. ESTRADA'S WORDS ARE NOT ACTIONABLE DEFAMATION ................... 2

    II.    THE ANTI-SLAPP LAW'S FEE-SHIFTING PROVISION APPLIES ........................ 5

CONCLUSION .............................................................................................................................. 8

## **TABLE OF AUTHORITIES**

PAGE(S)

Cases

*Clemente v. Espinosa*,
   749 F.Supp. 672 (E.D. PA 1990) ................................................................................ 4

*Erie Railroad Co. v. Tompkins*,
   304 U.S. 64 (1938) ..................................................................................................... 6

*In re Robert W. Mance,*
   *II*, 980 A.2d 1196 (D.C. 2009) .................................................................................. 4

*Paucek, et al. v. Shaulis*,
   349 F.R.D. 498 (D.N.J. 2025) ................................................................................ 6, 7

*Pelagatti v. Cohen*,
   536 A.2d 1337 (Pa. Super. 1987) .............................................................................. 4

Rule 12(b)(6).,
   966 F.3d 79 (2d Cir. 2020) ........................................................................................ 7

*Salaam v. Trump*,
   350 F.R.D. 14 (E.D. Pa. 2025) ................................................................................... 6

Statutes

42 Pa. C.S.A. § 8340.16(a) ............................................................................................... 6
42 Pa. C.S.A. § 8340.18(a) ........................................................................................... 6, 7
42 PA C.S. § 8340.18 ........................................................................................... 1, 5, 6, 8

Rules

FED.R. CIV. P. 12(B)(6) ......................................................................................... passim

Other Authorities

P.L. 836 ............................................................................................................................ 6

**PRELIMINARY STATEMENT**

Plaintiffs' thin skin does not make Mr. Estrada's statements about Plaintiffs' legal services actionable defamation. His statements are pure opinion or undisputed fact legally incapable of defamation, and Plaintiffs concede they are matters of public concern under the Anti-SLAPP Law.[1] Plaintiffs' attempt to leverage their resources to silence Mr. Estrada is precisely why the Anti-SLAPP Law mandates fee-shifting; Mr. Estrada should not be forced to expend resources defending protected speech against Plaintiffs' patently meritless defamation claim. As discussed more fully below and in Mr. Estrada's moving brief, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) and fees should be awarded under the Anti-SLAPP law.[2]

**PERTINENT UNDISPUTED FACTS BASED ON OPPOSITION BRIEF**

Plaintiffs concede Mr. Estrada was informed that their employee, Mr. Ratliff, was not licensed to practice in Washington, DC, and was required to be admitted *pro hac vice* there on November 8, 2024, after Mr. Ratliff missed hearings in September and October, 2024, and just days before Mr. Ratliff missed a third hearing in November, 2024. Opp. p. 3; *see also* Opp. p. 4 ("Defendant was advised that Mr. Ratliff needed to obtain a local counsel to move his pro hoc vice appearance, and this was the reason for the delays and Ratliff's inability to appear at the hearings, requiring postponements.").

---

[1] Unless otherwise defined, capitalized terms herein have the meaning ascribed to them in Mr. Estrada's moving brief ("Mvg. Br."), [Docket No. 21].

[2] Plaintiffs' opposition brief ("Opp."), [Docket No. 22], does not contest Mr. Estrada's motion to dismiss Count I and Counts IV-VI of the SAC for tortious interference, breach of contract, unjust enrichment and declaratory judgment, see Moving Br. § III. Accordingly, those Counts should be dismissed with prejudice.

**LEGAL ARGUMENT**

I. **MR. ESTRADA'S WORDS ARE NOT ACTIONABLE DEFAMATION**

In determining whether words are defamatory, the Court should be guided by the following uncontested, established principles under Pennsylvania law: (i) words are actionable defamation only if they are based on "provably false" facts *and* are capable of grievously fracturing Plaintiffs' standing in the community—annoyances and embarrassments are not enough; (ii) opinions and hyperbole are not actionable defamation unless they are based on undisclosed provably false facts; (iii) the context in which statements are made must be considered because "words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable;" and (iv) truth is a complete defense. *See* Moving Brief ("Mvg. Br.") p. 4-6, § II.B, and cases cited.

Plaintiffs' opposition brief describes eight statements allegedly made by Mr. Estrada that Plaintiffs claim are actionable defamation. Opp. p. 13-14, 17-18. However, this action concerns the words Mr. Estrada published, not Plaintiffs' descriptions. Based on the above legal principles, Mr. Estrada's words are not actionable defamation for the reasons set forth below and in the chart attached hereto as Exhibit A:

1. Whether Mr. Estrada believed Plaintiffs' responses to his emails were "unclear" or his emails to them were "upsettingly ignored" is pure opinion.

2. Whether Mr. Estrada believed the updates he received were "regular" is pure opinion. Moreover, Plaintiffs concede they informed Mr. Estrada that Mr. Ratliff would need to be admitted *pro hac vice* in Washington, DC, one time, on November 8, 2024, after Mr. Ratliff missed hearings in September and October, *see* Opp. p. 3-4, demonstrating Mr. Estrada's statement is true – he did not receive "regular" updates, he received one update after two

hearings had been missed. Moreover, such statement could not grievously fracture Plaintiffs' reputation.

3. Whether Mr. Estrada believed Plaintiffs "failed to provide a reason why it was taking months to enter into my case" is pure opinion. Moreover, Plaintiffs concede they informed Mr. Estrada that Mr. Ratliff would need to be admitted *pro hac vice* in Washington, DC, on November 8, 2024, after Mr. Ratliff missed hearings in September and October, *see* Opp. p. 3-4, demonstrating that Mr. Estrada's statement is true — Plaintiffs "failed to provide a reason why it was taking months to enter into my case." Moreover, such statement could not grievously fracture Plaintiffs' reputation.

4. Whether Mr. Estrada believed Plaintiffs "failed to understand the intricacies of TitleIX" is pure opinion. Furthermore, one client stating his opinion that a lawyer "failed to understand" a particular statute in a specific case is incapable of grievously fracturing reputation.

5. Whether Mr. Estrada believed that Plaintiffs "failed to read through appropriate and relevant University policy" is pure opinion. Moreover, one client stating his opinion that a lawyer "failed to read through" a specific policy in a particular case is incapable of grievously fracturing reputation.

6. Mr. Estrada's statement "I am a resident of San Jose, California; yet, I could not locate their office at Oyster Point located in South San Francisco, which is closest to my place of residence" is incapable of grievously fracturing reputation.

7. Whether Mr. Estrada believed Plaintiffs had a "lack of organization" is pure opinion. Moreover, those words are incapable of grievously harming reputation.

3

8. Whether Mr. Estrada believed Plaintiffs were "unprofessional" and their "flat non-refundable fees" were "unethical" is pure opinion. Moreover, it is undisputed that Plaintiffs charged non-refundable fees in violation of the Professional Rules of Conduct. *See In re Robert W. Mance II*, 980 A.2d 1196 (D.C. 2009) (holding non-refundable flat fee or retainer violates RPC 1.15(d)). Consequently, Mr. Estrada's statement that Plaintiffs' "flat non-refundable fees" are "unethical" is true.

Significantly, Plaintiffs have not identified any cases where statements by a former law firm client expressing dissatisfaction with the law firm's legal services were deemed defamatory, let alone defamation *per se*. Nor have Plaintiffs identified any cases where words like Mr. Estrada's, *e.g.*, "regular," "ignored," "failed to understand," "failed to read," "lack of organization," "unprofessional," or "unethical" were deemed actionable defamation, especially in the context of online consumer reviews where the quality of legal services – good and bad – is intended to be discussed. Such words stand in stark contrast to the kinds of words regarding an attorney's practice that have been deemed defamatory under Pennsylvania law. *See, e.g.*, *Pelagatti v. Cohen*, 536 A.2d 1337, 1345-46 (Pa. Super. 1987) (finding newspaper statements that attorney unlawfully conspired with judge to secure verdict and issue unlawful subpoenas support finding of defamation *per se*, stating "statements to the effect that an attorney has committed improper, illegal actions within the context of his practice, would tend to impugn his integrity, and thereby blacken his business reputation."); *Clemente v. Espinosa*, 749 F.Supp. 672, 676-78 (E.D. PA 1990) (finding statements by one CEO to another that an attorney was "wired," an "informant," and "connected with the [m]afia" were capable of defamatory meaning, as well as slanderous *per se*).

Even giving Plaintiffs the most favorable inferences, Mr. Estrada's statements are garden-variety complaints by a dissatisfied client on websites where legal services are reviewed, as

4

opposed to statements asserting Plaintiffs engaged in illegal activity or other business misconduct. As demonstrated by the eighteen other defamation lawsuits Plaintiffs have filed against dissatisfied clients who criticized Plaintiffs' legal services, *see* Mvg. Br. n. 2, Plaintiffs have a thin skin when it comes to such criticism, but annoying and embarrassing statements are not actionable defamation. *See* Moving Brief ("Mvg. Br.") p. 4-6, § II.B, and cases cited

Based on the foregoing, and as set forth in his moving brief, Mr. Estrada's statements about Plaintiffs' legal services are not actionable defamation because they are opinions, undisputed facts, and incapable of grievously fracturing Plaintiffs' reputation. Accordingly, Plaintiffs' claims for defamation and trade libel should be dismissed.

## II. THE ANTI-SLAPP LAW'S FEE-SHIFTING PROVISION APPLIES

Plaintiffs do not dispute Mr. Estrada's statements about their legal services are matters of public concern under the First Amendment of the U.S. Constitution and the Anti-SLAPP Law, *see* Mvg. Br. p. 19, nor do they contest the applicability of the Anti-SLAPP Law in this action.[3] Instead, they assert the Anti-SLAPP Law's fee-shifting provision, 42 Pa. C.S.A § 8340.18, does not apply because Mr. Estrada filed a Rule 12(b)(6) under the Federal Rules of Civil Procedure not a "special motion for dismissal" under the Anti-SLAPP Law. *See* Opp. p. 22-23. However, that assertion ignores the express terms of the Anti-SLAPP Law, the substantive immunity it provides, and the fact that the Anti-SLAPP Law and Rule 12(b)(6) do not conflict.

Plaintiffs' assertion that the Anti-SLAPP Law's fee-shifting provision does not apply because Mr. Estrada did not file a "special motion for dismissal" is wrong. Section 16 of the Anti-

---

[3] Plaintiffs' assertion, see Opp. p. 1, that Mr. Lento's disciplinary history is irrelevant to whether Mr. Estrada's statements defamed Plaintiffs – Mr. Lento's law firms – misses the point. That his disciplinary history is readily available on the Disciplinary Board's website in order to protect the public demonstrates that the professionalism and ethics of Pennsylvania lawyers and firms are matters of public concern.

SLAPP law has not been made effective by the Pennsylvania Supreme Court, whereas all other sections are effective. *See* PA P.L. 836, No. 72 §§ 2, 7; *Salaam v. Trump*, 350 F.R.D. 14, 18 n.3 (E.D. Pa. 2025) ("there is no dispute that § 8340.16 is not yet in effect."). However, even if it were effective, the Anti-SLAPP Law provides that a party "*may* file a special motion for dismissal of or judgment on a cause of action, or part of a cause of action, based on a party's protected public expression immunity," *see* 42 Pa. C.S.A. § 8340.16(a), but expressly "does not preclude a party from asserting protected public expression immunity through other pleadings and motions under the Pennsylvania Rules of Civil Procedure." *Id*. at § 8340.16(c). The Anti-SLAPP law's fee-shifting provision is mandatory where a complaint fails to state a claim for defamation. *See Id.* at § 8340.18(a). Accordingly, even if Section 16 of the Anti-SLAPP law was effective, the Anti-SLAPP Law does not condition fee-shifting on the filing of a "special motion for dismissal," and Mr. Estrada's fee application should be granted.

To be sure, the Anti-SLAPP Law's fee-shifting provision *is applicable* because the Anti-SLAPP Law does not conflict with Rule 12(b)(6) and is substantive under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). The Anti-SLAPP law applies where a plaintiff challenging protected public expression "fails to . . . state a cause of action upon which relief can be granted." *Id*. at § 8340.15(1)(ii). Accordingly, the Anti-SLAPP Law and Rule 12(b)(6) "answer the same question about the circumstances under which a court must dismiss a case before trial" and thus do not conflict. *Paucek, et al. v. Shaulis*, 349 F.R.D. 498,514 (D.N.J. 2025) (awarding fees under New Jersey's anti-SLAPP law in granting Rule 12(b)(6) motion because both New Jersey's anti-SLAPP law and Rule 12(b)(6) apply same standard and thus do not conflict).

Moreover, the Anti-SLAPP Law's fee-shifting provision is substantive under *Erie* because it is mandatorily tied to a grant of immunity thereunder. *See* 42 Pa. C.S.A. § 8340.18(a) ("If the

6

party is immune under section 8340.15 (relating to grant of immunity), the court shall award the party attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action."); *Paucek*, 349 F.R.D. at 516-17 (holding New Jersey anti-SLAPP law fee-shifting provision substantive under *Erie* because, like Pennsylvania Anti-SLAPP Law, it was tied to outcome of litigation). As Judge Bumb explained with respect to New Jersey's virtually identical anti-SLAPP law and fee-shifting provision:

> Failing to apply UPEPA's substantive fee-shifting provision for prevailing movants would be outcome determinative and frustrate the twin aims of *Erie* of discouraging forum shopping and inequity. If UPEPA did not apply in federal court a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to the protections of the anti-SLAPP statute would find considerable disadvantage in a federal proceeding. Indeed, the state and federal suits would have very different outcomes. Defendants in federal courts would have to pay the expenses of defending meritless SLAPP suits out of their own pockets. Meanwhile, defendants in state court would receive the fees intended for them by their state legislature. This inequitable outcome is exactly what *Erie* and its progeny sought to avoid.

*Paucek*, 349 F.R.D. at 518-19 (internal citations and quotation marks omitted).

Plaintiffs' reliance on *La Liberte v. Reid* is misplaced because the anti-SLAPP statute at issue there conflicted with Rule 12(b)(6) by requiring the plaintiff to meet a different pleading standard – "a probability that he or she will prevail on the claim" – than the plausibility standard required under Rule 12(b)(6). 966 F.3d 79, 87-88 (2d Cir. 2020) ("The statute thus establishes the circumstances under which a court must dismiss a plaintiff's claim before trial, a question that is already answered (differently) by Federal Rules 12 and 56") (internal quotations omitted).

Accordingly, given that the Anti-SLAPP Law does not conflict with Rule 12(b)(6) and the Anti-SLAPP Law's fee-shifting provision is substantive under *Erie*, Mr. Estrada's application for fees under 42 Pa. C.S.A. 8340.18(a) should be granted.

## **CONCLUSION**

WHEREFORE the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and Defendant shall be awarded fees and costs under Pennsylvania's Uniform Public Expression Protection Act, 42 Pa. C.S.A. § 8340.18.

Dated: February 9, 2026

By: */s/ Seth A. Goldberg*
Seth A. Goldberg, Esq. (92478)

PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
2005 Market Street, Suite 3150
Philadelphia, PA 19103
sgoldberg@pashmanstein.com
(267) 319-7762

Bruce S. Rosen, Esq. (*pro hac vice* forthcoming)
PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200

*Attorneys for Defendant Kris Emmanuel Estrada*