# Exhibit A

**EXHIBIT A**

| Plaintiffs' Description (Opp. p 13-14) | Mr. Estrada's Words | Capable of Defamatory Meaning |
|---|---|---|
| Lawyers employed by the Plaintiffs never responded to emails. | "I also sent Mr. Lento and his firm emails asking for updates on the status of Mr. Terrell Ratliff entering his appearance for my case, and I never received any clear responses. I eventually had a conference call with Mr. Lento and Mr. John E. Groff, who informed me they would draft a statement for the court and also email me the following day with an update. Yet, this never happened, and my follow-up emails were upsettingly ignored." Opp. p. 3. | No. Whether Mr. Estrada believed Plaintiffs' responses were "unclear" or his emails to them were "upsettingly ignored" is pure opinion. Moreover, one client stating his opinion that in a particular case a law firm's emails were "unclear" or "upsettingly ignored" does not grievously fracture reputation. At most, in the context of online client reviews where the quality of law firm services – good and bad – is intended to be discussed, Mr. Estrada's words are non-actionable rhetoric. |
| Lawyers employed by the Plaintiffs did not provide updates of his cases. | "Mr. Ratliff assured me in texts and calls that he would take on my case and spoke about his past experience working with prosecutors. Thinking I was in good hands, Mr. Ratliff then missed three court dates in September, October, and November 2024. He failed to provide me with regular updates on the progress of entering an appearance for my case. Mr. Ratliff also failed to provide a reason as to why it was taking months to enter into my case, nor did he provide any details or statement for me to provide to the Court explaining why I keep asking to extend my | No. Whether Mr. Estrada believed the updates he received were "regular" is pure opinion. Moreover, Plaintiffs' concede that they informed Mr. Estrada that Mr. Ratliff would need to be admitted in Washington, DC, *pro hac vice* only one time, on November 8, 2024, after Mr. Ratliff missed hearings in September and October, *see* Opp. p. 3, 4, demonstrating that Mr. Estrada's statement is true – he did not receive "regular" updates. Moreover, one client stating his opinion that in particular case a law firm's updates were not "regular" does not grievously fracture reputation. At most, in the context of online client reviews where the quality of law firm services – good and bad – is intended to be discussed, Mr. Estrada's words are non-actionable rhetoric. |

| | | |
|---|---|---|
| | case for another date." Opp. p. 3, 4 | |
| Lawyers employed by the Plaintiffs failed to explain why his case was taking so long. | "Mr. Ratliff assured me in texts and calls that he would take on my case and spoke about his past experience working with prosecutors. Thinking I was in good hands, Mr. Ratliff then missed three court dates in September, October, and November 2024. He failed to provide me with regular updates on the progress of entering an appearance for my case. Mr. Ratliff also failed to provide a reason as to why it was taking months to enter into my case, nor did he provide any details or statement for me to provide to the Court explaining why I keep asking to extend my case for another date." Opp. p. 3, 4 | No. Whether Mr. Estrada believed Plaintiffs adequately explained "why it was taking months to enter into my case," is pure opinion. Moreover, Plaintiffs' concede that they informed Mr. Estrada that Mr. Ratliff would need to be admitted in Washington, DC, *pro hac vice* only one time, on November 8, 2024, after Mr. Ratliff missed hearings in September and October, see Opp. p. 3, 4, demonstrating that Mr. Estrada's statement is true – Plaintiffs "failed to provide a reason why it was taking months to enter into" his case. |
| Mr. Terrill, one of Plaintiffs' employees failed to understand the intricacies of Title IX. | "I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney who was handling my matter in Washington DC. Non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Firm was charging me with non-refundable fees for services rendered in Washington DC. Also, Tom failed to produce any results for my disciplinary matter. He failed to realize that my matter did not fall under | No. Mr. Estrada's belief that Plaintiffs "failed to understand the intricacies of TitleIX" is pure opinion. Moreover, one client stating his opinion that a lawyer "failed to understand" a particular statute in a specific case does not grievously fracture reputation. At most, in the context of online client reviews where the quality of law firm services – good and bad – is intended to be discussed, Mr. Estrada's words are non-actionable rhetoric. |

2

| | | |
|---|---|---|
| | Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports." Opp. p. 9-10. | |
| Mr. Terrill failed to review the University's policies. | "By failing to read through appropriate and relevant University policy, operating under retainer fees that are not allowed in Washington DC, and unethically practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm were a disappointment." | No. Mr. Estrada's belief that Plaintiffs "failed to read through appropriate and relevant University policy" is pure opinion. Moreover, one client stating his opinion that a lawyer "failed to read through" a specific policy in a particular case does not grievously fracture reputation. At most, in the context of online client reviews where the quality of law firm services – good and bad – is intended to be discussed, Mr. Estrada's words are non-actionable rhetoric. |
| The Plaintiffs did not have offices where they said they were located. | "I am very disappointed with the Lento Law Firm. I am a resident of San Jose, California; yet, I could not locate their office at Oyster Point located in South San Francisco, which is closest to my place of residence." Opp. p. 9-10 | No. One client stating that he could not locate a law firm's office does not grievously fracture reputation. |
| The Plaintiffs were disorganized. | "It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based on their lack of organization in my opinion." Opp. p. 10 | No. Whether Mr. Estrada perceived Plaintiffs as having a "lack of organization" is pure opinion. Moreover, one client stating his opinion that in a particular case a law firm has a "lack of organization" does not grievously harm reputation. At most, in the context of online client reviews where the quality of law firm services – good and bad – is intended to be discussed, Mr. Estrada's words are non-actionable rhetoric. |
| The Plaintiffs and their employees were | "I had a very negative, unprofessional, and | No. Whether Mr. Estrada perceived Plaintiffs as "unprofessional" and |

| unprofessional and unethical. | unsatisfactory experience with Mr. Joseph Lento. In August 2024, I had two private phone calls with Mr. Joseph Lento, who assured me that he would be able to take my cases and provide legal representation. I later paid him a total of $20,000 for legal services in Washington DC. He charged me flat, non-refundable fees, which is already not allowed under the DC Ethics Rules of Professional Conduct (RPC), which is where both my matters took place." Opp. p. 10

"I had a very negative, unethical, and poor experience with Mr. Joseph Lento and the Lento Law Group. In August 2024, I retained and paid the Lento Law Group a total of $20,000 for their services in both a University matter and a legal matter in Washington DC. They charge flat, non- refundable fees, which is already not allowed under the DC Rules of Professional Conduct, which is where both my matters took place." Opp. p. 11 | "unethical" is pure opinion. Moreover, as set forth in Defendant's moving brief, which Plaintiffs do not dispute, Plaintiffs charged non-refundable fees in violation of the Professional Rules of Conduct. *See In re Robert W. Mance II*, 980 A.2d 1196 (D.C. 2009), the Court held that a non-refundable flat fee or retainer violates RPC 1.15(d). Consequently, Mr. Estrada's statement that Plaintiffs' representation of him was "unethical" is true. Furthermore, at most, in the context of online client reviews where the quality of law firm services – good and bad – is intended to be discussed, Mr. Estrada's words are non-actionable rhetoric. |

4