**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LENTO LAW GROUP PC, et al.,** | : | |
| ***Plaintiffs*,** | : | |
| **v.** | : | **Civil Action No. 25-2763** |
| **KRIS EMMANUEL ESTRADA,** | : | |
| ***Defendant*.** | : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL FEE PETITION UNDER 42 PA. C.S. § 8340.18**

**COMES NOW** Plaintiffs, Lento Law Group, P.C. and Lento Law Firm, by and through undersigned counsel, and respectfully submit this Opposition to Defendant Estrada's Supplemental Brief in Support of Attorneys' Fees and Costs pursuant to 42 Pa. C.S. § 8340.18 and the Court's Order of July 21, 2026. Plaintiffs file this Opposition to ensure the fee request is fully and properly addressed and to assist the Court in determining the reasonable amount of any award under applicable Pennsylvania law.

## INTRODUCTION

Plaintiffs respectfully submit this Opposition to Defendant Estrada's Supplemental Brief seeking $107,748.50 in attorneys' fees and $405 in costs under 42 Pa. C.S. § 8340.18. The submission is not consistent with the governing standards for reasonableness under Pennsylvania law.

PSWH seeks compensation for excessive and duplicative hours, including partner-level billing for routine tasks, overlapping attorney review, and nearly $25,000 devoted solely to preparing the fee petition. A straightforward defamation matter, resolved entirely on the pleadings,

was staffed by six attorneys - two partners, three associates, and one counsel - billing at premium rates, with no paralegal or legal assistant time recorded. Routine tasks ordinarily delegated to support staff were instead billed at partner rates, inflating the hours and magnifying the fee request. The supplemental brief also relies on national surveys, out-of-district anti-SLAPP cases, and Pennsylvania authorities that do not support the claimed rates or hours. The billing records reflect substantial self-generated work that does not correspond to the demands of this litigation.

When the applicable legal framework is applied, the requested fees must be substantially reduced or denied. Estrada bears the burden of proving reasonableness, and he has not met it.

## LEGAL STANDARD

Pennsylvania's fee-shifting statutes, including 42 Pa. C.S. § 8340.18, are interpreted through the framework established by Pa. R. Civ. P. 1717, which governs judicial review of fee petitions and requires courts to award only those fees that are reasonable under the circumstances. The Third Circuit has confirmed that Rule 1717 supplies the governing standard for Pennsylvania statutory fee awards in federal court. *Clemens v. New York Central Mutual Fire Ins. Co.*, 903 F.3d 396, 399 (3d Cir. 2018).

Rule 1717 directs courts to evaluate five factors:

1. the time and effort reasonably expended;
2. the quality of the services rendered;
3. the results achieved;
4. the magnitude, complexity, and uniqueness of the litigation; and
5. whether the fee was contingent.

The analysis begins with the lodestar, calculated by multiplying the hours reasonably expended by a reasonable hourly rate. But the lodestar is only presumptively reasonable when the

applicant meets its burden of demonstrating that both the hours and the rates are justified. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).

Critically, courts must exclude hours that are excessive, redundant, or unnecessary, even where fee-shifting is mandatory. The United States Supreme Court has long held that fee petitions must be reduced where counsel overstaffs, over-briefs, or performs duplicative work. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Pennsylvania courts apply the same principle, requiring trial courts to scrutinize the reasonableness of the time expended and to eliminate hours not justified by the nature of the litigation. *Richards v. Ameriprise Fin., Inc.*, 217 A.3d 854, 872 (Pa. 2019).

Under these standards, Estrada bears the burden of proving that the fees he seeks are reasonable, necessary, and proportionate. His submission does not meet that burden.

## ARGUMENT

### I. PSWH's Hourly Rates Are Not Reasonable for This Case

Estrada relies on national surveys and out-of-district anti-SLAPP cases to justify partner rates approaching $935 per hour. But Pennsylvania courts require that hourly rates reflect the local Philadelphia market and be tied to the actual complexity and demands of the matter. When those standards are applied, PSWH's requested rates exceed what is reasonable for a straightforward Rule 12(b)(6) defamation case resolved entirely on the pleadings.

#### A. Estrada's own cases undermine his position

Estrada cites *Teamsters Pension Trust Fund of Phila. & Vicinity v. Lumbcach Co.*, 2026 WL 900512 (E.D. Pa. Mar. 30, 2026), to argue that partner rates of $735–$850 per hour are reasonable. But *Teamsters* emphasized that rate reasonableness depends on: *"the complexity of the legal theories argued, the extent of litigation, the use of good faith, and the extent of success."*

The litigation in *Teamsters* involved ERISA withdrawal liability, an area requiring specialized expertise, extensive statutory analysis, and complex damages calculations. By contrast, this case involved no discovery, no hearings, no expert work, and straightforward Rule 12(b)(6) briefing. The complexity in *Teamsters* far exceeds the issues here, and the rates approved there do not support PSWH's request.

Estrada also cites *McCready v. Re/Max Achievers*, 2026 WL 1847251 (E.D. Pa. June 25, 2026), where the Court approved elevated partner rates in a pro bono civil-rights matter. Courts routinely enhance rates in pro bono cases to encourage representation. That rationale does not apply to commercial defamation litigation, and *McCready* does not support PSWH's rates.

**B. Anti-SLAPP cases from other states are irrelevant**

Estrada relies on anti-SLAPP fee awards from California, Nevada, and Massachusetts. But those jurisdictions apply special motion procedures, heightened burdens, and evidentiary standards that Pennsylvania does not. The Court expressly held: "The Anti-SLAPP Law imposes no heightened or different burden on the plaintiff before trial." (Op. at 31)

PA UPEPA adopts the Rule 12(b)(6) standard. Thus, unlike California's special motion practice, Pennsylvania's anti-SLAPP framework does not justify elevated rates. Fee awards must reflect ordinary Philadelphia rates for Rule 12(b)(6) litigation, not rates from jurisdictions with fundamentally different anti-SLAPP mechanisms.

**C. Reasonable Philadelphia rates are lower**

Courts in this District routinely reduce partner rates to $500–$650 per hour for comparable Rule 12(b)(6) work. In *Grammenos v. Allstate Ins. Co.*, No. 07-2725, 2009 WL 2448556 (E.D. Pa. Aug. 7, 2009), the Court reiterated that a reasonable hourly rate must be: "calculated according to prevailing market rates in the community."

The prevailing Philadelphia market rate for routine motion practice in commercial matters is significantly lower than the rates PSWH seeks. Their requested rates exceed what is reasonable for this type of litigation.

**D. PSWH's rates exceed what is reasonable under Rule 1717**

Rule 1717 requires that hourly rates be "reasonably reflective of the relevant market and the magnitude, complexity, and uniqueness of the claim." *Birth Center v. St. Paul Companies, Inc.*, 727 A.2d 1144, 1161 (Pa. Super. Ct. 1999). This case involved no novel factual issues, no complex statutory interpretation, and no litigation beyond the pleadings. The hourly rates PSWH seeks are not reasonably reflective of the Philadelphia market for this type of work and should be reduced accordingly.

**II. The Hours Claimed Are Excessive, Duplicative, and Unnecessary**

PSWH seeks compensation for nearly 100 hours of work on two Rule 12(b)(6) motions and an additional 37.6 hours preparing the fee petition itself. Under Pennsylvania law, hours must be excluded when they are excessive, redundant, or unnecessary, even where fee-shifting is mandatory. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Richards v. Ameriprise Fin., Inc.*, 217 A.3d 854, 872 (Pa. 2019). When the correct standard is applied, PSWH's hours exceed what is reasonable for the work performed.

**A. Defendant's own authorities show that PSWH overbilled**

Estrada's reliance on *Sheffer v. Experian Information Solutions, Inc.*, 290 F. Supp. 2d 538 (E.D. Pa. 2003), illustrates precisely why PSWH's hours are not reasonable. *Sheffer* involved a fundamentally different type of litigation: multiple statutory claims under the Fair Credit Reporting Act, complex regulatory issues, and extensive factual disputes requiring careful parsing of the record. The briefing in *Sheffer* was divided among two attorneys who were addressing overlapping

claims across several filings. In short, *Sheffer* was a fact-intensive, multi-layered statutory case that demanded significantly more attorney time than a single-issue defamation claim resolved solely on the pleadings.

None of those features are present here. PSWH's motions addressed one defamation theory, required no factual development, and applied the ordinary Rule 12(b)(6) standard. The Court's opinion confirms that PA UPEPA "invokes the Rule 12(b)(6) standard" and imposes "no heightened or different burden" on the plaintiff before trial. (Op. at 24, 31). The legal question was straightforward: whether Plaintiffs stated a claim. *Sheffer* does not support the hours PSWH claims; it highlights how disproportionate those hours are.

Estrada's additional reliance on *Earley v. JMK Assocs.*, 2020 WL 1875535 (E.D. Pa. Apr. 15, 2020), and *Lease v. Fishel*, 712 F. Supp. 2d 359 (M.D. Pa. 2010), underscores the same point. Both cases involved fact-intensive disputes and multi-claim pleadings that required detailed factual analysis and broader legal research. Here, PSWH's work consisted solely of legal argument on the pleadings, without discovery, evidentiary development, or factual complexity. Defendant's own authorities demonstrate that the hours claimed exceed what is reasonable for routine motion practice under Rule 12(b)(6).

**B. PSWH created work through inefficient staffing and duplicative review**

The billing records show that a substantial portion of the hours claimed were generated not by the demands of the litigation, but by PSWH's own staffing decisions. A straightforward, single-issue defamation matter, resolved entirely on the pleadings, was staffed by six attorneys: two partners, three associates, and one counsel, all billing at premium rates. No paralegal or legal assistant time appears anywhere in the records. Routine tasks ordinarily delegated to support staff,

such as cite-checking, bluebooking, compiling exhibits, and preparing billing analyses, were instead performed by attorneys, inflating the hours and magnifying the fee request.

In addition, the distribution of hours underscores the inefficiency. PSWH's two partners billed a combined 89.9 hours, over sixty-five percent of all time recorded, while the three associates billed only 39.7 hours and counsel billed 7.6 hours. The complete absence of paralegal or legal assistant time means that every clerical, organizational, and citation-checking task was performed at attorney rates. Courts routinely reduce fee requests where top-heavy staffing and lack of delegation inflate the lodestar, and the imbalance reflected in PSWH's billing records is precisely the type of inefficiency Rule 1717 requires courts to exclude.

Two partners alone billed more than two-thirds of all hours in this case, a disproportionate allocation that is inconsistent with efficient litigation practice for a routine Rule 12(b)(6) matter.

The records reflect repeated instances of partner-level review of associate-level work, overlapping partner review of the same briefs, and multiple attorneys billing for internal conferences that did not correspond to any increase in complexity. PSWH also billed for duplicative research on issues already addressed in prior filings, suggesting that counsel revisited settled questions rather than relying on work already completed.

Hours generated by counsel's internal choices - whether through over-staffing, layered review, or performing clerical or routine tasks at attorney rates - are not compensable. Fee petitions must exclude time that is "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Pennsylvania courts apply the same principle under Rule 1717, requiring trial courts to eliminate hours that do not reflect the magnitude or complexity of the litigation. *Birth Center v. St. Paul Companies, Inc.*, 727 A.2d 1144, 1161 (Pa. Super. Ct. 1999).

The procedural history confirms the straightforward nature of the litigation. The Court noted that Plaintiffs conceded deficiencies in the First Amended Complaint, filed a Second Amended Complaint without leave, and that the case proceeded entirely on the pleadings. Hours generated by procedural repetition or amendment cycles are not compensable under Rule 1717.

Here, the case involved no discovery, no factual disputes, no expert analysis, and no hearings. The hours PSWH seeks reflect the firm's internal staffing preferences - not the work reasonably required to litigate two Rule 12(b)(6) motions. Rule 1717 does not permit shifting those costs to Plaintiffs.

**C. The issues were not complex and did not justify elevated hours**

Estrada repeatedly suggests that the "newness" of PA UPEPA created a level of complexity that justifies the hours PSWH billed. The record does not support that characterization. The Court's opinion makes clear that PA UPEPA does not introduce any heightened procedural or evidentiary burden. Instead, the statute:

a) adopts the ordinary Rule 12(b)(6) standard,

b) imposes no heightened burden on the plaintiff, and

c) does not require special motion practice or unique briefing structures.

(Op. at 24–31)

The Court's opinion squarely rejected that argument, holding that Pennsylvania's Anti-SLAPP Law imposes "no heightened or different burden" on plaintiffs before trial. This finding confirms that UPEPA did not expand the scope of work required or justify elevated staffing or partner-level involvement.

The Court's analysis confirms that the statute's novelty did not alter the governing standard or expand the scope of the work required. The legal question remained exactly what it would have

been in any defamation case: whether Plaintiffs stated a claim under Rule 12(b)(6). The Court resolved the matter entirely on the pleadings, without discovery, factual development, or evidentiary submissions. That procedural posture underscores that the issues did not require extensive research, layered briefing, or the level of attorney time PSWH seeks to shift.

The Court expressly found that the claims failed because the statements were either true, opinion, or not capable of defamatory meaning. This confirms that the legal issues were narrow and straightforward, reinforcing that the litigation did not require the extensive attorney time PSWH seeks to shift.

Novelty alone does not transform a straightforward Rule 12(b)(6) motion into complex litigation. Pennsylvania courts have consistently held that compensable hours must reflect the actual magnitude and complexity of the matter, not counsel's characterization of it. *Birth Center v. St. Paul Companies, Inc.*, 727 A.2d 1144, 1161 (Pa. Super. Ct. 1999). Here, the issues were narrow, the standard was familiar, and the Court's opinion confirms that PA UPEPA did not require anything beyond ordinary motion practice. The hours PSWH claims are not justified by the nature of the litigation.

**D. PSWH's hours exceed what is reasonable under Rule 1717**

Rule 1717 requires that compensable hours be "reasonably reflective of the magnitude, complexity, and uniqueness of the claim." *Birth Center v. St. Paul Companies, Inc.*, 727 A.2d 1144, 1161 (Pa. Super. Ct. 1999). The record here demonstrates that the litigation did not present any of the features that justify elevated hours. The case proceeded entirely on the pleadings. There was no discovery, no factual development, no expert analysis, no hearings, and no litigation beyond two Rule 12(b)(6) motions addressing a single defamation theory. The Court's opinion confirms

that PA UPEPA did not alter the governing standard or introduce any procedural complexity; it simply incorporated the familiar Rule 12(b)(6) framework.

Against that backdrop, the hours PSWH seeks are not reasonably reflective of the work required. The motions did not involve competing factual narratives, evidentiary disputes, or statutory schemes requiring specialized expertise. They required only the application of settled pleading standards to allegations the Court ultimately found insufficient. Rule 1717 does not permit shifting hours that exceed what the litigation reasonably demanded, and the hours PSWH claims do not correspond to the magnitude or complexity of this matter. They should be reduced accordingly.

The Court emphasized that Plaintiffs did not dispute many of the underlying facts and that the SAC largely objected to Estrada's characterization rather than the truth of the events. This confirms that the litigation involved no factual disputes requiring investigation or evidentiary development, further undermining PSWH's claimed hours.

**III. The Supplemental Fee Brief Is Grossly Inflated**

Estrada seeks $24,958 for preparing the supplemental fee petition - an amount that is facially disproportionate to the work required. Pennsylvania courts have long recognized that fee-petition hours must be scrutinized closely, and they routinely reduce such hours by 50% or more when counsel over-litigates the request. Under Rule 1717, compensable hours must reflect the "magnitude, complexity, and uniqueness of the claim." *Birth Center v. St. Paul Companies, Inc.*, 727 A.2d 1144, 1161 (Pa. Super. Ct. 1999). The supplemental brief filed here does not meet that standard.

The submission largely repackages arguments already made in the underlying Rule 12(b)(6) briefing. It repeats the same legal positions, relies on the same authorities, and offers no

new factual or procedural analysis. Much of the brief consists of boilerplate fee-shifting law, lengthy attorney biographies, and a recitation of PSWH's own credentials - material that does not require extensive attorney time and does not advance the fee analysis. The remainder of the filing consists of attaching billing records and describing the hours already expended, tasks that do not justify nearly forty hours of partner and associate time.

The staffing of the fee petition itself further demonstrates the inefficiency. The petition was drafted primarily by one associate, who billed 28.6 hours, and then repeatedly revised by a partner billing at $930 per hour. The work consisted largely of compiling invoices, summarizing hours, preparing exhibits, and drafting attorney declarations, tasks that are ordinarily handled by paralegals or junior staff. Yet PSWH recorded no paralegal or legal assistant time at all. The result is a fee-petition lodestar inflated by partner-level revisions of clerical work, which courts routinely reduce under Rule 1717 and Hensley.

Fee petitions are intended to be straightforward, and courts expect counsel to prepare them efficiently. When a fee request becomes a second round of litigation, Rule 1717 requires courts to reduce the hours accordingly. The supplemental brief here did not present complex issues, did not require specialized research, and did not involve any factual development beyond compiling billing entries. Nothing in the record justifies the level of time PSWH seeks to shift, and the hours claimed for preparing the fee petition should be substantially reduced.

**IV. The Contingency Arrangement Does Not Justify Higher Fees**

Estrada argues that PSWH's contingency arrangement warrants awarding the full amount of fees requested. Pennsylvania and Third Circuit law do not support that position. A contingency agreement may explain counsel's incentive structure, but it does **not** alter the lodestar calculation, and it does **not** justify elevated rates or expanded hours. The Third Circuit has made this clear:

contingency arrangements "do not increase the lodestar." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 534 (3d Cir. 1997).

Under Rule 1717, the lodestar must still reflect reasonable hours at reasonable rates, regardless of how counsel chose to structure its fee agreement. The contingency arrangement does not transform routine Rule 12(b)(6) motion practice into complex litigation, does not justify partner-level billing for associate-level tasks, and does not permit shifting nearly forty hours for preparing a fee petition. The fee applicant bears the burden of demonstrating that the hours and rates are reasonable under Pennsylvania law, and the existence of a contingency agreement does not relieve Estrada of that burden.

Here, the work performed consisted of two motions to dismiss addressing a single defamation theory, with no discovery, no factual development, and no hearings. The hours and rates PSWH seeks must be evaluated under the same standards that apply in any statutory fee-shifting case. The contingency arrangement does not justify awarding fees that exceed what the litigation reasonably required.

## CONCLUSION

For the reasons set forth above, Estrada has not met his burden under Rule 1717 to demonstrate that the hours and rates claimed are reasonable, necessary, or proportionate to the work performed. The requested hourly rates exceed prevailing Philadelphia market rates for routine Rule 12(b)(6) motion practice, and the hours claimed are inflated by inefficient staffing, duplicative partner review, and nearly forty hours devoted to preparing a fee petition that required no factual development or complex legal analysis. The fee request should be substantially reduced to reflect only the time reasonably required for this straightforward defamation matter resolved entirely on the pleadings.

Respectfully Submitted,

LENTO LAW GROUP, PC

BY: _Lawrence A. Katz, Esq_
LAWRENCE A. KATZ
Counsel for Plaintiffs
1814 East Route 70 - Suite 321
Cherry Hill, NJ 08003
Phone: 856.652.2000 EXT 497
Fax: 856.375.1010
Lakatz@lentolawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed through the Court's CM/ECF system on the date reflected on the docket. Pursuant to Federal Rule of Civil Procedure 5 and the Court's electronic filing procedures, service of this filing was automatically effected on all counsel of record through the CM/ECF system.

*s/ Lawrence A. Katz*___
LAWRENCE A. KATZ